Charles BRANDT and Minor Child  *v.*
Marsha WILLHITE

CA 06-819                                                 255 S.W.3d 491

Court of Appeals of Arkansas
Opinion delivered April 11, 2007

*Taylor Law Firm*, by: *John Mikesch*, for appellant.

*Boyer, Schrantz, Rhoads & Teague, P.A.*, by: *Robert D. Teague*, for appellee.

D.P. MARSHALL JR., Judge.  Charles Brandt appeals the circuit court's award of grandparent visitation with his son M.B. to Marsha Willhite, the boy's maternal grandmother. Brandt argues that Willhite failed to rebut the statutory presumption that his decision to deny her visitation was in M.B.'s best interest. We agree and reverse the circuit court's decision.

I.

Brandt was married to Carrie Willhite. They lived in Wichita, Kansas, when M.B. was born in November 1994. During

the first few years of M.B.'s life, Marsha Willhite visited him regularly. When he was between three and five years old, M.B. stayed with Willhite several times at her home in Colorado without his parents.

When the boy was four and one-half years old, Brandt, Carrie, and M.B. moved to Bella Vista, Arkansas, near Brandt's family. A few days later, Carrie returned to Kansas with M.B., filed for divorce, and obtained temporary custody of M.B. She did not tell Brandt she was leaving, and for several months he did not know where Carrie and M.B. were. Willhite accommodated her daughter's plan in opposition to Brandt. In January 2000, Carrie and Brandt settled the property issues and were divorced by a Kansas court. The decree gave full custody of M.B. to Brandt.

After the divorce, Willhite's contact with M.B. became sporadic. In August 2000, Brandt made all the arrangements for himself and M.B. to meet Willhite for a weekend in Wichita. During Christmas of 2000, M.B. visited Willhite in Colorado and Carrie in Oklahoma. During the summer of 2001, when M.B. was six years old, Willhite traveled to Bella Vista to take him to Colorado for another visit. When Willhite arrived in Bella Vista, she and Brandt had a falling out in M.B.'s presence. M.B. did not go home with her. A month later, Willhite contacted Brandt to ask if the boy could spend Thanksgiving with her, and Brandt refused. There was virtually no contact between Willhite and M.B. between the summer of 2001 and the summer of 2004.

In June 2004, Willhite and two of her daughters made an unannounced visit to Bella Vista. Brandt invited them into his home to have supper with him and M.B. Willhite made plans to meet M.B. again the following day. There was confusion, however, about when the meeting was to take place, and it did not occur. There was no further contact between Willhite and M.B. in 2004. In 2005, Doni Files (Willhite's daughter) contacted M.B.'s school and requested a yearbook with the boy's picture in it. In response, Brandt sought a restraining order against Willhite and Files. Willhite filed a counter-petition to establish grandparent visitation rights. After a hearing, the circuit court granted Willhite's petition for grandparent visitation and denied Brandt's petition for a restraining order.

## II.

Our governing statute is Arkansas Code Annotated § 9-13-103(c)–(e) (Supp. 2005), which we quote in the margin.[1] In *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002), the supreme court rejected a facial challenge to the then-extant version of this statute, but held that it was unconstitutional as applied in that case. In response, the General Assembly amended the statute into its current form, which we apply in this case.

Brandt first argues that the current version of the statute is unconstitutional because it violates his fundamental right to care for and control his child. He did not, however, make this argument

---

[1]

(c)(1) There is a rebuttable presumption that a custodian's decision denying or limiting visitation to the petitioner is in the best interest of the child.

(2) To rebut the presumption, the petitioner must prove by a preponderance of the evidence the following:

(A) The petitioner has established a significant and viable relationship with the child for whom he or she is requesting visitation; and

(B) Visitation with the petitioner is in the best interest of the child.

(d) To establish a significant and viable relationship with the child, the petitioner must prove by a preponderance of the evidence the following:

(1)(A) The child resided with the petitioner for at least six (6) consecutive months with or without the current custodian present;

(B) The petitioner was the caregiver to the child on a regular basis for at least six (6) consecutive months; or

(C) The petitioner had frequent or regular contact with the child for at least twelve (12) consecutive months; or

(2) Any other facts that establish that the loss of the relationship between the petitioner and the child is likely to harm the child.

(e) To establish that visitation with the petitioner is in the best interest of the child, the petitioner must prove by a preponderance of the evidence the following:

(1) The petitioner has the capacity to give the child love, affection, and guidance;

(2) The loss of the relationship between the petitioner and the child is likely to harm the child; and

(3) The petitioner is willing to cooperate with the custodian if visitation with the child is allowed.

to the circuit court. Brandt therefore waived this issue. *Walters v. Arkansas Department of Human Services*, 77 Ark. App. 191, 196-97, 72 S.W.3d 533, 536 (2002).

Applying the statute to this record, we reverse. We have the definite and firm conviction that the circuit court clearly erred in finding that Willhite successfully rebutted the presumption that Brandt's decision to deny visitation was in M.B.'s best interest. *Rebsamen v. Rebsamen*, 82 Ark. App. 329, 334, 107 S.W.3d 871, 874 (2003) (standard of review).

To rebut the statutory presumption, Willhite had to prove that she had a significant and viable relationship with M.B. and that visitation with M.B. was in his best interest. Ark. Code Ann. § 9-13-103(c)(2). The circuit court determined that Willhite demonstrated a significant and viable relationship with her grandson because she had frequent and regular contact with M.B. for at least twelve consecutive months, and the loss of the relationship between Willhite and M.B. was likely to harm M.B. Ark. Code Ann. § 9-13-103(d)(1)(C) & (d)(2). The circuit court also determined that visitation was in the boy's best interest. The court found that Willhite demonstrated the capacity to love and guide M.B., the loss of their relationship was likely to harm him, and she would cooperate with Brandt in visitation. Ark. Code Ann. § 9-13-103(e). In reviewing the circuit court's decision, we defer to that court's superior position for measuring the witnesses' credibility and evaluating what was in this child's best interest. *Hollinger v. Hollinger*, 65 Ark. App. 110, 112, 986 S.W.2d 105, 106 (1999).

Willhite established that she once had a significant and viable relationship with M.B. During the first four years of the boy's life, Willhite had the kind of regular contacts one would expect between a grandparent and a grandchild living in different cities. This relationship satisfied the ordinary meaning of the statute's criteria: frequent or regular contact for at least twelve consecutive months. Those criteria define the terms "significant" and "viable."

Brandt asks us to hold that the statute requires the twelve consecutive months of contact to occur close in time prior to a grandparent's petition for visitation. We decline to do so. We cannot add, under the flag of interpretation, a significant additional qualification to the law enacted by the General Assembly. Because Willhite established regular contact with M.B. for at least twelve consecutive months, she proved a significant and viable relationship.

The circuit court clearly erred, however, by concluding that visitation was in M.B.'s best interest. On this issue — Willhite's second step in rebutting the presumption in favor of Brandt's decision to deny visitation — the particulars of Willhite and M.B.'s relationship are critical. We cannot disagree that Willhite would give M.B. affection and guidance or that she would cooperate with Brandt on visitation. But the record undermines the circuit court's conclusion that M.B. would be harmed by losing the relationship with Willhite.

By the time Willhite filed her petition, almost five years had passed since she and M.B. had regular contacts. Their relationship had been significant and viable, in the statute's words. But that relationship was mostly a thing of the past by 2005 when this dispute arose. At the time of the petition, M.B.'s relationship with his maternal grandmother was, at best, tenuous. It is our firm conclusion that the circuit court erred in finding M.B. was likely to be harmed by the loss of that relationship.

At the time of the hearing, the evidence showed M.B. to be a smart, well-adjusted, and happy eleven-year-old child. M.B. testified that he did not want any contact with Willhite, which contradicts the circuit court's conclusion that he was likely to be harmed by the lack of visitation. Though the circuit court ordered M.B. to undergo counseling to reconcile his negative feelings toward Willhite, we believe the court was trying to resuscitate a dying relationship rather than prevent harm to M.B. Willhite presented no evidence of likely harm to M.B. from the status quo: periodic contact at Brandt's discretion.

Because Willhite did not establish that the loss of the relationship was likely to harm M.B., the circuit court clearly erred in concluding that Willhite proved that visitation was in M.B.'s best interest. She therefore failed to rebut the statutory presumption that Brandt's decision denying visitation was the best thing for his son.

Reversed.

GLOVER and BAKER, JJ., agree.