Cody OLDHAM *v.* David and Paula MORGAN

07-315                                        271 S.W.3d 507

Supreme Court of Arkansas
Opinion delivered January 17, 2008

*Mark Rees*, for appellant.

*Michael A. Lilly*, for appellee.

JIM GUNTER, Justice. This appeal arises from the February 21, 2007, order of the Craighead County Circuit Court granting grandparent visitation to Appellees David and Paula Morgan ("the Morgans"). We reverse the circuit court's order of grandparent visitation because the Morgans failed to rebut the statutory presumption that a custodian's decision denying or limiting visitation to the petitioner is in the best interest of the child. *See* Ark. Code Ann. § 9-13-103 (Supp. 2005).

Jaley Oldham was born on April 24, 2003, to Felicia Morgan and Appellant Cody Oldham. Felicia and Jaley were living with Appellant until January 2006 when Felicia moved to Missouri to take a better job. On July 25, 2006, the Craighead County Circuit Court established joint custody, awarding primary custody of Jaley to Felicia and awarding visitation to Appellant. Felicia was killed in a car accident on November 17, 2006. Thereafter, Jaley began living with Appellant. On December 1, 2006, the circuit court granted full custody of Jaley to Appellant. On December 20, 2006,

Jaley's maternal grandparents, the Morgans, filed a petition for grandparent visitation asking the circuit court to establish specific visitation rights, specifically asking for the Revised Minimum Chancery Court Visitation Schedule. In the petition, the Morgans asserted that granting them visitation was in the best interest of Jaley.

On February 21, 2007, the circuit court found that, while Appellant was a fit parent, it was in the best interest of Jaley to grant the Morgans grandparent-visitation rights. The circuit court awarded the Morgans visitation consisting of every other weekend from February 9, 2007, to July 2007. The circuit court awarded them visitation on the second weekend of every month beginning in August 2007. The circuit court's order further provided that the Morgans were entitled to holiday visitation in accordance with the Revised Circuit Court Visitation Schedule and summer visitation. Appellant now brings this appeal.

For his sole point on appeal, Appellant argues that the circuit court erred in granting the Morgans grandparent visitation. Specifically, Appellant asserts that, pursuant to Arkansas case law, a fit parent has a fundamental right under the Fourteenth Amendment to be free from state intrusion on his or her parenting of a minor child. Appellant further contends that he allowed the Morgans to visit with Jaley, and that the Morgans only began these proceedings because they wanted a structured schedule for the future.

The Morgans respond, arguing that the circuit court was correct in granting them visitation pursuant to Ark. Code Ann. § 9-13-103 because they have had frequent contact with Jaley throughout her life, seeing the child three to four times per week prior to her mother's move to Missouri, and at least one visit per month thereafter. The Morgans further assert that their visitation with Jaley is in the best interest of the child, especially given her young age and the recent death of her mother.

As a rule, when the setting of visitation is at issue, we will not reverse the court absent an abuse of discretion. *Davis v. Davis*, 248 Ark. 195, 451 S.W.2d 214 (1970). Abuse of discretion is discretion applied thoughtlessly, without due consideration, or improvidently. *Carlew v. Wright*, 356 Ark. 208, 148 S.W.3d 237 (2004). However, a circuit court's conclusion of law is given no deference on appeal. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005).

Appellant relies on *Troxel v. Granville*, 530 U.S. 57 (2000), and *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002), for his assertion that the circuit court erred in interfering with his deci-

sions concerning Jaley's visitation with the Morgans. In *Troxel*, a plurality of the United States Supreme Court held that the State of Washington's grandparent-visitation statute was unconstitutional as applied in that case due in large part to its "breathtakingly broad" scope allowing "any person" to petition for visitation "at any time." 530 U.S. at 67. The central problem with that statute, according to the plurality, was that it failed to accord a fit parent's decision "any presumption of validity or weight whatsoever." *Id.* The Court recognized the presumption that a fit parent acts in the best interest of his or her child. 530 U.S. at 68. In light of this presumption, the court held that a court that reviews a fit parent's decision regarding grandparent visitation "must accord at least some special weight to the parent's own determination," but did not elaborate on the nature or extent of that "weight." 530 U.S. at 70. *See also Robinson v. Ford-Robinson,* 362 Ark. 232, 208 S.W.3d 140 (2005).

In *Linder*, we reviewed the constitutionality of Arkansas's grandparent-visitation statute in light of the holding in *Troxel*, and held that it was unconstitutional as applied. Like the statute reviewed in *Troxel*, our statute failed to give any presumptive or special weight to a parent's decision that grandparent visitation was not in the best interest of the child. Further, our statute required that the court issue written findings when denying visitation, but not when granting visitation, implicitly placing the burden of proof on the parent, in direct contravention of *Troxel*. The trial court had already determined that the mother in *Linder* was a fit parent for all purposes except determining visitation. Applying a strict-scrutiny standard, we held that the Fourteenth Amendment right of due process attached and special weight should have been accorded to the mother's decision. However, we declined to rewrite our Grandparent Visitation Act (GPVA), stating that such a task was best left to the General Assembly.

The Arkansas General Assembly rewrote the GPVA, adding a statutory presumption that the parent's decision to deny or limit visitation is in the best interest of the child. *See* Act 652 of 2003. This revised statute, Ark. Code Ann. § 9-13-103, provides:

(a) For purposes of this section:

(1) "Child" means a minor under the age of eighteen (18) of whom the custodian has control and who is:

(A) The grandchild of the petitioner; or

(B) The great-grandchild of the petitioner;

(2) "Counseling" means individual counseling, group counseling, or other intervention method;

(3) "Custodian" means the custodial parent of the child with the authority to grant or deny grandparental visitation;

(4) "Mediation service" means any formal or informal mediation; and

(5) "Petitioner" means any individual who may petition for visitation rights under this section.

(b) A grandparent or great-grandparent may petition a circuit court of this state for reasonable visitation rights with respect to his or her grandchild or grandchildren or great-grandchild or great-grandchildren under this section if:

(1) The marital relationship between the parents of the child has been severed by death, divorce, or legal separation;

(2) The child is illegitimate and the petitioner is a maternal grandparent of the illegitimate child; or

(3) The child is illegitimate, the petitioner is a paternal grandparent of the illegitimate child, and paternity has been established by a court of competent jurisdiction.

(c)(1) There is a rebuttable presumption that a custodian's decision denying or limiting visitation to the petitioner is in the best interest of the child.

(2) To rebut the presumption, the petitioner must prove by a preponderance of the evidence the following:

(A) The petitioner has established a significant and viable relationship with the child for whom he or she is requesting visitation; and

(B) Visitation with the petitioner is in the best interest of the child.

(d) To establish a significant and viable relationship with the child, the petitioner must prove by a preponderance of the evidence the following:

(1)(A) The child resided with the petitioner for at least six (6) consecutive months with or without the current custodian present;

(B) The petitioner was the caregiver to the child on a regular basis for at least six (6) consecutive months; or

(C) The petitioner had frequent or regular contact with the child for at least twelve (12) consecutive months; or

(2) Any other facts that establish that the loss of the relationship between the petitioner and the child is likely to harm the child.

(e) To establish that visitation with the petitioner is in the best interest of the child, the petitioner must prove by a preponderance of the evidence the following:

(1) The petitioner has the capacity to give the child love, affection, and guidance;

(2) The loss of the relationship between the petitioner and the child is likely to harm the child; and

(3) The petitioner is willing to cooperate with the custodian if visitation with the child is allowed.

(f)(1) An order granting or denying visitation rights to grandparents and great-grandparents shall be in writing and shall state any and all factors considered by the court in its decision to grant or deny visitation under this section.

*Id.*

This revised statute gives the parent's decision presumptive or special weight in deciding whether grandparent visitation is in the best interest of the child as required by *Troxel* and *Linder*. The statute also now requires the trial court to state its reasons for denying or granting grandparent visitation.

■ Next, we must decide whether the grandparent visitation granted by the circuit court in the present case is allowed under § 9-13-103. According to § 9-13-103(b)(2), there is a presumption that Appellant's decision in denying or limiting visitation to the Morgans is in the best interest of Jaley. In order to rebut this presumption, the Morgans must prove that they have

established a significant and viable relationship with Jaley and that visitation with them is in Jaley's best interests. Pursuant to subsection (d)(1)(C), the Morgans can establish a significant and viable relationship with Jaley by proving that they have had frequent or regular contact with her for at least twelve consecutive months. Appellant does not dispute that the Morgans have a significant and viable relationship with Jaley. At the hearing, the Morgans testified that before Jaley moved to Missouri, they saw her three or four times a week. Jaley often spent the night with them and went to church with them on Sundays. After Jaley and her mother moved, the Morgans saw her at least once a month, and they spoke with her on the phone at least every other day. Therefore, pursuant to § 9-13-103(d)(1)(C), the Morgans do have a significant and viable relationship with Jaley.

In order to establish that grandparent visitation is in Jaley's best interest, the Morgans must prove that (1) the Morgans have the capacity to give the child love, affection, and guidance; (2) the loss of the relationship between the Morgans and Jaley is likely to harm Jaley; and (3) that the Morgans are willing to cooperate with Appellant if visitation with Jaley is allowed. Ark. Code Ann. § 9-13-103(e). As Justice O'Connor noted in *Troxel*, grandparental visitation has no historic roots in the common law but rather is a legislated creature of the late twentieth century. *See Linder, supra* (citing *Troxel*, 530 U.S. at 96-97 (plurality opinion)). Because the grandparent-visitation statute is in derogation of or at variance with the common law, it must be strictly construed. *See Recinos v. Zelk*, 369 Ark. 7, 250 S.W.3d 221 (2007).

The circuit court found that it was in the best interest of Jaley to allow grandparent visitation with the Morgans. At the hearing the circuit court stated, "it's in the best interest of this child, considering her age, the circumstances of her mother's death, and the fact that during the last year or two of her life she was primarily with her mother and grandparents. I think it would be very stressful for her not to have some structured visitation." While clearly focusing on Jaley, the circuit court never actually made a finding that the loss of the relationship between Jaley and the Morgans would likely result in harm to Jaley. Even if the court had, the testimony at trial does not support such a finding. Mrs. Morgan testified at trial that she had seen Jayley seven times from November 17, 2006 to January 29, 2007, including four overnight visits. There was no evidence presented at trial that the relationship

between the Morgans and Jaley had been lost or would be lost. Further, Mrs. Morgan testified at the hearing:

> [A]t the moment, [Appellant] is very willing to work with me and let me have [Jaley] as much as I want her. But I do know that people get remarried and it does affect that relationship. I just want to know that in five years time, if he should remarry, that I have a chance to still see her. It is kind of more of a safeguard for the future. Right now he has been more than willing to let me have her when I need her and want to see her.

Here, no one disputes that Appellant was allowing the Morgans to see Jaley before the filing of the petition for grandparent visitation. According to Mrs. Morgan's testimony at the hearing, the petition was only filed to ensure that the Morgans would continue to see Jaley in the future. Therefore, the petition for grandparent visitation in this case was premature.

■ Because the Morgans did not prove a loss of the relationship between them and Jaley that would likely harm Jaley, they failed to establish that court-ordered visitation was in Jaley's best interest and therefore failed to rebut the statutory presumption. Thus, the circuit court abused its discretion in granting grandparent visitation to the Morgans. Accordingly, we reverse the circuit court's order for grandparent visitation.

Reversed and dismissed.