Cassie PETERSON (now Atchley) *v.* Iris DEAN and Keith Dean

CA 07-970

283 S.W.3d 610

Court of Appeals of Arkansas
Opinion delivered April 30, 2008

*Dodds, Kidd & Ryan*, by: *R. Brannon Sloan*, for appellant.

*Joel W. Price*, for appellees.

SARAH J. HEFFLEY, Judge. Appellant Cassie Atchley brings this appeal from an order granting visitation rights with her daughter KP to her parents, appellees Iris and Keith Dean. For reversal, appellant argues that the grandparent visitation statute, Ark. Code Ann. § 9-13-103 (Repl. 2008), is unconstitutional, both facially and as applied, and she also contends that the trial court erred in finding that appellees had rebutted the statutory presumption that her decision to restrict visitation was in the child's best interest. We affirm.

Years ago, appellees were foster parents, and they adopted appellant and her two brothers when appellant was nine years old.

The children were available for adoption after their biological parents were convicted of charges connected with the murder of a police informant.

In May 1999, appellant married Marc Peterson, and KP was born of that union in April 2002. Marc was in the National Guard, and his unit was activated and sent to Arizona shortly after KP's birth. Prior to Marc's departure, appellees had contact with KP on a weekly basis, usually on weekends. Visits became more frequent after Marc left and as appellant moved closer to appellees' home in Paris, Arkansas. Appellees saw KP almost every day, and the child often stayed overnight with them, especially on Saturdays so that they could attend church the next morning. According to appellees, overnight visits increased to several times a week when appellant began dating other men, namely Lennie Bailey and Jimmy Atchley.

Appellant and Marc divorced in June of 2003, and appellant was granted custody of KP. Appellant married Jimmy Atchley the following October. In August 2004, appellant and Jimmy had twins, a boy and a girl, who were born prematurely and hospitalized in Little Rock for seven weeks. During this time, either appellees or Jimmy's mother kept KP. Another child, a son, was born in December 2005. With the births of these children, appellees continued to see KP regularly but not quite as much as before.

In the fall of 2005, relations between appellant and appellees deteriorated. Keith and Jimmy ran against each other for justice of the peace. Also, KP had been acting out sexually, and she began exhibiting aggressive behaviors as well. Anonymous calls were made to the child-abuse hotline accusing either Jimmy or Iris, and later Keith, of harming KP. During this time, Iris and Keith secretly taped some of their conversations with appellant out of fear that they were being "set up." The allegations of abuse were investigated, but none of them were substantiated. Even so, the conflicts arising from these circumstances prompted appellant to limit the time appellees spent with KP.

Appellees then filed a petition to establish visitation rights in March 2006. After hearing testimony from numerous witnesses over the course of three days, the court took the case under advisement and later issued a letter opinion explaining its decision to grant appellees visitation with KP on either a Saturday or Sunday every other month from 8:00 a.m. to 5:00 p.m. Appellees

were also allowed phone contact with KP once a week and on holidays and KP's birthday. Appellant appeals from the order formalizing the trial court's decision.

■ Appellant presents two arguments challenging the constitutionality of our grandparent-visitation statute. Appellant maintains that she challenged the statute on constitutional grounds in her pleadings, but we discern no claim that the statute was unconstitutional. Although appellant asserted that she had a fundamental right under the Constitution to make decisions about the custody, care, and control of her child, simply stating that she has such a right does not constitute an argument that the statute impermissibly infringed on the exercise of that right. Indeed, appellant invoked the protections of the statute by asserting that it confers a rebuttable presumption that her decision to limit visitation was in her child's best interest. Because appellant failed to make these arguments below, she waived them for purposes of appeal. *See Brandt v. Willhite*, 98 Ark. App. 350, 255 S.W.3d 491 (2007) (holding that the failure to challenge the constitutionality of the grandparent-visitation statute at the hearing represented a waiver of the issue on appeal).[1] It is settled law that we will not address arguments, even those of constitutional dimension, for the first time on appeal. *Smith v. Thomas*, 100 Ark. App. 195, 266 S.W.3d 226 (2007).

The remaining issue is whether the trial court's findings made pursuant to the statute are supported by the evidence. Arkansas Code Annotated section 9-13-103(b)(1) permits a grandparent to petition a circuit court for reasonable visitation rights with respect to a grandchild when, among other things, the marital relationship between the parents of the child has been severed by death, divorce, or legal separation. The statute gives the custodial parent's decision to limit or deny visitation presumptive or special weight by giving the parent the benefit of a rebuttable presumption that the custodian's decision is in the best interest of the child.

---

[1] Appellant has filed a motion to supplement the record to include a February 15, 2008, letter from the attorney general's office stating that it had recently received notice that appellant was challenging the constitutionality of the statute and declining to intervene. We consider the motion to supplement the record as moot because the constitutional issues are not preserved for appeal. We also remind counsel that we do not consider matters that are outside the record to determine issues on appeal. *In re Adoption of H.L.M.*, 99 Ark. App. 115, 257 S.W.3d 597 (2007).

*See Oldham v. Morgan,* 372 Ark. 159, 271 S.W.3d 507 (2007). To rebut this presumption, the grandparent must prove by a preponderance of the evidence that the grandparent has established a significant and viable relationship with the child and that visitation with the grandparent is in the child's best interest. Ark. Code Ann. § 9-13-103(c)(2)(A) & (B). The statute also sets out how these matters are to be proven. It provides:

(d) To establish a significant and viable relationship with the child, the petitioner must prove by a preponderance of the evidence the following:

(1)(A) The child resided with the petitioner for a least six (6) consecutive months with or without the current custodian present;

(B) The petitioner was the caregiver to the child on a regular basis for at least six (6) consecutive months.

(C) The petitioner had frequent or regular contact with the child for at least twelve (12) consecutive months; or

(2) Any other facts that establish that the loss of the relationship between the petitioner and the child is likely to harm the child.

(e) To establish that visitation with the petitioner is in the best interest of the child, the petitioner must prove by a preponderance of the evidence the following:

(1) The petitioner has the capacity to give the child love, affection and guidance;

(2) The loss of the relationship between the petitioner and the child is likely to harm the child; and

(3) The petitioner is willing to cooperate with the custodian if visitation with the child is allowed.

Appellant concedes that KP had spent a considerable amount of time with appellees since her birth, and thus she does not challenge the trial court's finding that appellees had established a significant and viable relationship with KP by having frequent and regular contact with her for at least a year. Instead, appellant contests the trial court's finding that visitation was in KP's best interest. Appellant contends that the evidence fails to demonstrate

that appellees have the capacity to give KP love, affection and guidance; that there is insufficient evidence that the loss of the relationship with appellees is likely to harm KP; and that the evidence shows that appellees were not willing to cooperate with her.

We review chancery cases de novo on the record, but we do not reverse a finding of fact by the chancery court unless it is clearly erroneous. *Medlin v. Weiss*, 356 Ark. 588, 158 S.W.3d 140 (2004). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* In reviewing the trial court's decision, we defer to that court's superior position for measuring the witnesses' credibility and evaluating what was in the child's best interest. *Brandt v. Willhite*, 98 Ark. App. 350, 255 S.W.3d 491 (2007).

We find it unnecessary to recite in detail the accusations the parties levied against one another. It would also serve no useful purpose to recount the disturbing behaviors the child was exhibiting. It is enough to say that first Iris was accused of sexually abusing KP, and then later Keith was accused of abusing the child. Appellant also presented testimony that Keith had attempted to sexually assault her when she was a child and that he had behaved inappropriately toward her when she was separated from Marc. There was also testimony that Iris was demanding and controlling, and that both Iris and Keith had used extreme disciplinary measures when appellant and her brothers were young. Appellant also accused Iris and Keith of reporting to DHS that Jimmy was sexually assaulting KP.

On the other hand, Iris and Keith denied that they had harmed the child in any way. They presented evidence that the charge against Keith was made after they filed the petition seeking visitation and when he had not seen the child for several months, and that neither charge was substantiated. They placed blame for the abuse on Jimmy and recounted incidents that portrayed Jimmy in a poor light. There was also evidence that Jimmy had physically abused appellant on at least one occasion. The testimony also showed that appellant had reestablished a relationship with her biological mother.

The trial court sifted through the voluminous record and made the following findings in its letter opinion concerning the best interest of KP:

The first [requirement under the statute] is that the petitioners have the capacity to give the child love, affection, and guidance. There is no doubt in my mind that the petitioners have overwhelmingly established this statutory requirement. The third requirement is that it must be shown that the petitioners are willing to cooperate with the custodian if visitation with the child is allowed. Again, I find that the petitioners have met their burden of proof in regard to this requirement.

The second requirement is that it must be shown that the loss of the relationship between the petitioner and the child is likely to harm the child. This, I believe is the point over which the testimony is in the greatest dispute and upon which this case turns.

It is obvious to me that Cassie Atchley is being greatly pressured by three different and competing interests. First, there is no question but that Marc Peterson, the father of [KP], continues to try to maintain a close relationship with his child. . . . The second party asserting pressure on Ms. Atchley is her current husband Jimmy Atchley. I believe that he and Ms. Atchley have had some marital difficulties and that he is resentful of the involvement Mr. and Mrs. Dean have shown in supporting their daughter. Finally, there are the pressures being asserted by Mr. and Mrs. Dean on Ms. Atchley to continue what had been a close relationship with their grand-daughter until the fall of 2005.

It is also obvious to me that the relationship between Mr. and Mrs. Atchley and Mr. and Mrs. Dean and between Mr. Petersen and Mr. and Mrs. Dean has become at best acrimonious. It is also obvious to me that [KP] has become the focus of this animosity and is being used to try to win this battle of wills. While all parties profess to only have the best interest of [KP] at heart, the testimony demonstrates otherwise. Reports to DHS, secret tapings of conversations, termination of communication, and allegations of unfitness against each other abound at this point resulting, in my opinion, to the detriment of the person over whom the parties profess the greatest concern – [KP].

In assessing the cause of the problems that [KP] has begun exhibiting and the cause of those problems one thing is clear, Cassie Atchley's credibility is seriously lacking. Ms. Atchley accused three independent agencies, Jumpstart, Western Arkansas Guidance and Counseling, and Arkansas Children's Hospital of altering their records when those records and her trial testimony were not

consistent. I do not believe that these agencies altered their records and that Ms. Atchley's accusations of Mr. and/or Mrs. Dean of having enough "influence" to have these records altered to be baseless. Likewise, I find the remainder of Ms. Atchley's testimony and its credibility to be lacking.

I specifically find that the problems that [KP] began experiencing began when the relationship with the petitioners was essentially terminated by Cassie Atchley. Ms. Atchley has made a number of serious accusations subsequent to that date all of which have been unfounded and in my opinion have harmed the child and are likely to subject her to further harm if not stopped. I find that the loss of the relationship between the petitioners and [KP] continues to be likely to harm the child and that it would clearly be in her best interest for that relationship to be re-established.

Our review of the record reveals evidence that Iris and Keith shared a close and bonded relationship with KP. Thus, we are not left with a definite and firm conviction that the trial court was wrong to find that Iris and Keith had the capacity to give love, affection and guidance to the child. The trial court accepted Iris and Keith at their word when they testified that they would cooperate with appellant if visitation were allowed. Given that credibility determination, we are also unwilling to say that the trial court's finding on this issue is clearly against the preponderance of the evidence.

With respect to the likelihood of harm should visitation not be allowed, the trial court made two critical findings. First, the trial court found that appellant's credibility was lacking, meaning that the trial court did not believe the accusations and complaints appellant lodged against Iris and Keith. Secondly, the trial court found that the child's behavioral problems did not arise until after appellant began limiting visitation, meaning that the child was being harmed because visits with Iris and Keith had been re-stricted. There is support in the record for this finding, and we are not able to say that the finding of likely harm is clearly erroneous.

Almost as an aside, appellant makes the argument that the trial court erred by allowing Iris, a long-time teacher, and Tammy Rose, the assistant principal, special education supervisor and mental health coordinator in the Waldron School District, to testify about the detrimental affect that limiting or terminating visitation might have on KP. Appellant contends that these wit-

nesses were not mental health professionals and thus were not qualified to offer an opinion on this matter. The only authority appellant cites is Rule 701 of the Arkansas Rules of Evidence, which allows lay persons to offer opinion testimony if the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of her testimony or the determination of a fact in issue. Appellant has cited no further authority and has otherwise not developed an argument that the testimony complained of was or was not admissible under the rule. The admission of evidence is reviewed under an abuse-of-discretion standard. *Crowell v. Baker*, 369 Ark. 428, 255 S.W.3d 858 (2007). We perceive none here.

In her reply brief, appellant raises the contention that Iris and Keith's petition was premature, citing the supreme court's decision in *Oldham v. Morgan*, 372 Ark. 159, 271 S.W.3d 507 (2008). We decline to consider this point because we do not address arguments made for the first time in a reply brief. *Bilo v. El Dorado Broadcasting Co.*, 101 Ark. App. 267, 275 S.W.3d 660 (2008).

Affirmed.

HART and VAUGHT, JJ., agree.