Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★ ★

## MEMORANDUM OPINION

No. 04-10-00043-CR

Emilio **BARRON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2009-CRN-000762-D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:        Rebecca Simmons, Justice
                Steven C. Hilbig, Justice
                Marialyn P. Barnard, Justice

Delivered and Filed:  May 4, 2011

AFFIRMED

The appellant's motion for rehearing is denied.  We withdraw our opinion and judgment

of February 23, 2011, and substitute this opinion and judgment to clarify a portion of the

opinion.

This appeal arises from Appellant Emilio Barron's conviction for one count of murder

and two counts of robbery.  Barron raises the following issues: (1) the trial court erred in

admitting unfairly prejudicial photographic evidence; (2) the evidence was legally and factually

insufficient to support his conviction; and (3) an alleged error in the jury charge was fundamental error. We affirm the trial court's judgment.

## BACKGROUND

Early in the morning of January 20, 2009, Abiel Rodriguez and his father, Jose Rodriguez-Vidal, were walking down the street when they were attacked by two men. Abiel was able to provide a description of the assailants to the police, who picked up Barron, and his friend, Joel Magana. Blood found on Barron's shoes was later matched to Jose, who died from his injuries. Barron was convicted of one count of felony murder, one count of robbery, and one count of aggravated robbery.

## PHOTOGRAPHIC EVIDENCE

The State offered exhibit 47, which was a photograph of Barron with cuts and blood on his hands and knuckles. Barron argues that the photograph's probative value was substantially outweighed by its danger of unfair prejudice, and that the photograph was improper character evidence because it showed Barron making a gang sign.

### A. Standard of Review

"The admissibility of photographs over an objection is within the sound discretion of the trial court." *Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010). A trial court abuses its discretion if its action is arbitrary or unreasonable, or outside the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

### B. Unfair Prejudice

Evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. To determine whether the potential for unfair prejudice substantially outweighs the probative aspects of a photograph, we evaluate four factors: "(1) the

probative value of the [photograph]; (2) [its] potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; [and] (4) the proponent's need for the evidence." *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). We also consider "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Davis*, 313 S.W.3d at 331.

The trial court could have reasonably determined that the evidence was probative that Barron was Jose's assailant. Barron challenged the State's evidence linking him to the attack on Jose by impeaching Abiel Rodriguez, the State's only eyewitness to the incident. Although Barron argues that his trial counsel offered to stipulate that Barron had cuts on his hands, this offer of stipulation to a fact does not render the photograph less probative. *Cf. Jones v. State*, 843 S.W.2d 487, 500–01 (Tex. Crim. App. 1992) (rejecting the argument that stipulation to cause of death and identity rendered photographs unnecessary). Thus, this factor supports the trial court's admission of the photograph.

The second factor considers the "evidence's tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). Barron complains of State's exhibit 47, a four-inch by six-inch color photograph that depicts Barron after the incident with cuts and blood on his hands. The defense argued that seeing the gang sign would unfairly prejudice Barron by implying that the defendant was a member of a gang. Barron argues that the State drew the jury's attention to the photograph during closing argument. However, the State did not explain that the hand gestures were gang signs or make reference to gang activity in its closing argument. Moreover, nothing in the record

indicates that it would be obvious to a viewer of the photograph that the hand gesture was a gang sign, as opposed to a different gesture. The trial court could have reasonably concluded that there was only a slight potential for the photograph to irrationally impress the jury. *See id.*

Considering the third factor, the testimony regarding the admission of the photograph consisted of two brief questions and two brief answers for a total of nine lines in the record. "Because [so] little time was [spent on] the photograph, this factor weighs in favor of admissibility." *See Erazo*, 144 S.W.3d at 495.

To address the fourth factor, we consider whether the proponent has other evidence to establish the fact the photograph is offered to prove; how strong that other evidence is; and whether the fact that the photograph shows is an issue that is in dispute. *See id.* at 495–96. Though the defense offered to stipulate to the injuries, the stipulation would not be as strong as the jury's observations of Barron's injuries on his knuckles, and no other evidence established these injuries.

Weighing each of the four factors, the trial court's conclusion—that the probative value of the photograph was not substantially outweighed by the danger of unfair prejudice to Barron—was not outside the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 391.

## C. Improper Character Evidence

Barron also argues that the photograph, State's exhibit 47, is improper character evidence. *See* TEX. R. EVID. 404(a), 404(b). Rule 404(b) provides, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). When offering the photograph into evidence and during closing arguments, the State relied on the photograph showing the blood and cuts on

Barron's hands exclusively to prove that Barron attacked Rodriguez-Vidal with his hands. The State did not argue that the photograph proved that Barron was in a gang and that the jury should infer, based on his gang membership, that Barron attacked Rodriguez-Vidal. Moreover, as we have previously noted, nothing in the record indicates that it would be obvious to a viewer of the photograph that the hand gesture was a gang sign. Thus, the photograph was not evidence of "other crimes, wrongs or acts," but rather evidence that Barron committed *this* crime, wrong, and act. *See* TEX. R. EVID. 404(b). Having reviewed the record, we cannot say that the trial court's overruling of Barron's objection to admitting State's exhibit 47 was arbitrary, unreasonable, or outside the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 391. Therefore, we overrule this issue.

### SUFFICIENCY OF THE EVIDENCE

Barron raises legal and factual sufficiency challenges with regard to his murder conviction under Texas Penal Code sections 7.02(a)(2) and 7.02(b). The Court of Criminal Appeals recently determined that there is no meaningful distinction between the factual sufficiency standard of *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its subsequent line of cases, and the legal sufficiency standard of *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010). Guided by *Brooks*, we now apply the *Jackson* legal sufficiency standard of review to a factual sufficiency challenge. *See id.* We therefore construe Barron's factual sufficiency challenge as a legal sufficiency challenge.

Under *Jackson*, an appellate court examines "all of the evidence in the light most favorable to the verdict," asking if a jury was "rationally justified in finding guilt beyond a reasonable doubt." *Id.* at 899. We must decide whether "*any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. "The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979).

The evidence is legally sufficient to support a guilty verdict for murder under section 19.02(b)(2) of the Texas Penal Code if there is evidence that the defendant "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." *See* TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2003). A defendant may be criminally responsible for the acts of another if he, "with intent to promote or assist the commission of the offense, . . . solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). Finally, circumstantial evidence may be sufficient to prove the identity of a perpetrator. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986).

Abiel testified that he and his father, Jose, were walking down the street together at about 5:30 a.m. when two males approached and demanded money from them. Abiel described them as two males, one who was light skinned and tall, and the other who was shorter with a darker complexion. His descriptions, respectively, matched Magana and Barron, who were later arrested by Officer Fernando De Hoyos. Abiel testified that the taller attacker, Magana, chased him down the street, while the shorter assailant, Barron, stayed back and hit Jose. After being struck by Magana, Abiel ran back and witnessed both assailants attacking his father.

Officer De Hoyos testified that he was called to the scene and, after being given a description of the attackers by Abiel, he patrolled the area, encountered Barron and Magana, and

detained them.  Another officer testified that he confiscated and took pictures of Barron's shoes.  A forensic scientist testified that the blood samples taken from Barron's shoes matched Jose's blood.  A woman who lived across the street from the crime scene testified that Barron and Magana were in her house earlier that night; that she awoke to the sounds of Jose's moaning; that moments later the defendants tried to get back into her house; and that she noticed blood on both of them.  Finally, Dr. Rajesh Kannan testified that Jose died as a result of closed-head trauma, which was caused by a blunt force from a person's hands, feet, or any other broad and hard and flat surface.

Based on the DNA evidence linking Barron to the crime, and the testimony that tied Barron and Magana to the scene, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson*, 443 U.S. at 319.

## JURY CHARGE

Barron finally complains that he suffered egregious harm because the jury charge contained three theories of criminal responsibility as to the murder charge; one theory of criminal responsibility as to the charge of aggravated robbery of Jose; and two theories of criminal responsibility as to the charge of robbery of Abiel.  Barron argues that the differing number of theories could have confused the jurors and compromised his right to a unanimous verdict.

In reviewing a claim of charge error, we first determine whether error exists.  *Druery v. State*, 255 S.W.3d 491, 504 (Tex. Crim. App. 2007); *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).  "If we find error, we must then determine whether the error caused sufficient harm to require reversal." *Druery*, 225 S.W.3d at 504;  *Hutch*, 922 S.W.2d at 171.  "[T]he degree of harm necessary for reversal depends upon whether the error was preserved." *Druery*, 225 S.W.3d at 504.  Because Barron did not object to the charge, he must demonstrate that he

suffered actual egregious harm; that is, the error must be so harmful that it affects the "very basis of the case, deprive[d him] of a valuable right, or vitally affect[ed] a defensive theory." *See Warner v. State*, 245 S.W.3d 458, 461–62 (Tex. Crim. App. 2008) (internal question marks omitted). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005); *Fulcher v. State*, 274 S.W.3d 713, 716 (Tex. App.—San Antonio 2008, pet. ref'd). Absent a showing to the contrary, "we may presume that the jury acted rationally." *Richardson v. State,* 879 S.W.2d 874, 882 (Tex. Crim. App. 1993).

Barron does not argue that the jury charge misstated the law, only that the jury could have mistakenly applied a theory of criminal responsibility applied in Count I for murder in reading Counts II and III for battery of Jose and Abiel, respectively. However, the jury charge accurately stated the elements of the crime and the law, including the theories of criminal responsibility applicable to each count. Moreover, Abiel's testimony that Barron and Magana had attacked him and Jose supported submitting the multiple theories of criminal responsibility to the jury. Though Barron contends that the jury may have been confused, we presume that the jury acted rationally and followed the jury instruction. *See id.*; *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Finally, the jury instructions were clear in applying the different theories of criminal responsibility to each charged offense, and the jury returned a separate guilty verdict for each charged offense. Accordingly, we overrule this issue.

### CONCLUSION

We affirm the judgment of the trial court.

Rebecca Simmons, Justice

DO NOT PUBLISH