2012 Ark. App. 474

**Summer HARRISON (formerly Phillips), Appellant,**

v.

**Lee PHILLIPS, Dale Phillips, and Carol Phillips, Appellees.**

**No. CA 11–601.**

Court of Appeals of Arkansas.

Sept. 12, 2012.

---

**1.** *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990).

**2.** *Paulson* was a divorce/separate maintenance case.

Margo D. Warner and Heather McKinney, for appellants.

Blagg Law Firm, by: Ralph Blagg, Clinton and Nicki Nicolo, for appellees.

JOHN B. ROBBINS, Judge.

This is a grandparent visitation case. The appellant is Summer Harrison (formerly Phillips), and her son is ten-year-old S.P. Summer appeals from a March 14, 2011, order of the Faulkner County Circuit Court awarding grandparent visitation to S.P.'s paternal grandparents, appellees Dale and Carol Phillips.

For reversal, Summer argues that the trial court abused its discretion in awarding grandparent visitation and that its order is unsupported by the evidence. Summer also argues that the Arkansas Grandparental Visitation Rights Act, Ark. Code Ann. § 9–13–103 (Repl.2009), is unconstitutional as applied to her. Because Summer's constitutional argument was not raised and developed before the trial court, and because she failed to obtain a ruling, her constitutional argument is not preserved for review. *See Brown v. Kelton,* 2011 Ark. 93, 380 S.W.3d 361; *Gwin v. Daniels,* 357 Ark. 623, 184 S.W.3d 28 (2004). However, we agree with Summer's first argument that the award of grandparent visitation amounted to an abuse of discretion, and we reverse the trial court's decision. Specifically, we agree with Summer's contention that the appellees failed to rebut the statutory presumption that her decision denying visitation was in S.P.'s best interest.

Relevant to this appeal, Ark.Code Ann. § 9–13–103 (Repl.2009) contains the following provisions:

(b) A grandparent or great-grandparent may petition a circuit court of this state for reasonable visitation rights with respect to his or her grandchild or grandchildren or great-grandchild or

great-grandchildren under this section if:

(1) The marital relationship between the parents of the child has been severed by death, divorce, or legal separation;

(2) The child is illegitimate and the petitioner is a maternal grandparent of the illegitimate child; or

(3) The child is illegitimate, the petitioner is a paternal grandparent of the illegitimate child, and paternity has been established by a court of competent jurisdiction.

(c)(1) There is a rebuttable presumption that a custodian's decision denying or limiting visitation to the petitioner is in the best interest of the child.

(2) To rebut the presumption, the petitioner must prove by a preponderance of the evidence the following:

(A) The petitioner has established a significant and viable relationship with the child for whom he or she is requesting visitation; and

(B) Visitation with the petitioner is in the best interest of the child.

(d) To establish a significant and viable relationship with the child, the petitioner must prove by a preponderance of the evidence the following:

(1)(A) The child resided with the petitioner for at least six (6) consecutive months with or without the current custodian present;

(B) The petitioner was the caregiver to the child on a regular basis for at least six (6) consecutive months; or

(C) The petitioner had frequent or regular contact with the child for at least twelve (12) consecutive months; or

(2) Any other facts that establish that the loss of the relationship between the petitioner and the child is likely to harm the child.

(e) To establish that visitation with the petitioner is in the best interest of the child, the petitioner must prove by a preponderance of the evidence the following:

(1) The petitioner has the capacity to give the child love, affection, and guidance;

(2) The loss of the relationship between the petitioner and the child is likely to harm the child; and

(3) The petitioner is willing to cooperate with the custodian if visitation with the child is allowed.

(f)(1) An order granting or denying visitation rights to grandparents and great-grandparents shall be in writing and shall state any and all factors considered by the court in its decision to grant or deny visitation under this section.

As a rule, when the setting of visitation is at issue, we will not reverse the trial court absent an abuse of discretion. *Oldham v. Morgan*, 372 Ark. 159, 271 S.W.3d 507 (2008). Abuse of discretion is discretion applied thoughtlessly, without due consideration, or improvidently. *Id.*

Summer was married to S.P.'s father, Lee Phillips, when S.P. was born on October 21, 2001. Summer filed a complaint for divorce against Lee in Faulkner County Circuit Court on September 14, 2004. While the divorce action was pending, the trial court entered a temporary order on February 18, 2005, which awarded alternate-weekend visitation to Lee at the home of Lee's parents and supervised by Lee's father, appellee Dale Phillips. Pursuant to Summer's subsequent petition for emergency relief, the trial court entered an order on April 1, 2005, which suspended visitation between Lee and S.P. until further orders of the court.

The trial court entered a divorce decree on February 9, 2007, granting Summer a

divorce from Lee. The divorce decree awarded full custody of S.P. to Summer and provided that Lee was entitled to visitation, supervised by his parents, every other Saturday for four hours. Shortly thereafter, on April 10, 2007, the trial court again suspended visitation between Lee and S.P., and ordered that there be no contact between them until further orders of the court.

After a hearing held on December 31, 2008, the trial court entered an order on March 3, 2009, finding that it was not in S.P.'s best interest to have supervised visitation with Lee. However, that order provided that Lee be allowed to communicate with S.P. The trial court found that S.P. had suffered some maltreatment of a sexual nature at the hands of his father. The trial court ordered Summer, Lee, and S.P. to attend counseling with the goal of establishing visitation between S.P. and his father. An amended order was entered on June 23, 2009, wherein the "maltreatment of a sexual nature" language was removed and the trial court found that it "was satisfied at the time of the previous hearing that something unseemly had happened between [Lee] and the child and the court has not changed its opinion." The amended order denied Lee visitation but permitted Lee and his family to write letters and send gifts to S.P.

The appellees herein, Dale and Carol Phillips, filed a motion to intervene on February 19, 2010. In their motion, the appellees asserted that it would be detrimental to S.P. should his relationship with his paternal grandparents not be maintained. Dale and Carol sought to intervene in order to seek grandparent visitation with the child, and attached to their motion to intervene was a complaint requesting a visitation schedule. Summer opposed the motion to intervene and filed an answer to the complaint on March 19, 2010, asking that Dale and Carol be denied visitation. The trial court entered an order on July 16, 2010, permitting the paternal grandparents to intervene for purposes of pursuing visitation with S.P. A hearing on the issue of grandparent visitation was held on December 8, 2010. At the time of the hearing, Summer and S.P. had relocated to Fort Smith and the appellees lived in Clinton.

Maureen Kessler, an outpatient therapist in Fort Smith who counseled S.P. six times over the past year, testified at the hearing. Ms. Kessler testified that S.P. was adamant that he does not want to visit his father, Lee Phillips, at all. Ms. Kessler stated, however, that she thought that S.P. was prepared to have visitation with his paternal grandparents on a limited basis with supervision. If visits were granted, Ms. Kessler recommended that they occur four or five times a year. Ms. Kessler noted that S.P. mentions his "g-daddy" (Dale) and expresses fond memories of him. While Ms. Kessler recommended that there be visitation with S.P.'s grandparents, she noted that they should be supervised because S.P. had told her in several sessions that he is terrified that his father will show up if he visits his grandparents.

Ms. Kessler testified that S.P. has a great relationship with his mother. Summer has remarried, and S.P. has a great relationship with his stepfather as well. Ms. Kessler described them as a good, cohesive family unit. Ms. Kessler indicated that S.P. had not recently had any regular contact with his grandparents, and it was her opinion that S.P. was thriving despite the lack of a continuous relationship with them. Ms. Kessler stated that S.P. did not want to visit his grandparents unless his parents (Summer and his stepfather) were there with him. Ms. Kessler indicated that if there is to be more grandparent visitation, S.P.'s anxiety will in-

crease and he will need to continue to see her.

Dale Phillips testified that he and Carol saw S.P. often before Summer and Lee divorced. After the divorce, Dale and Carol briefly had some unsupervised visits with S.P. However, Dale said that they have had little contact with S.P. over the past two or three years until a few recent visits that were supervised by Summer and her husband. During those visits with S.P. they would eat breakfast at a restaurant and then go bowling or treat S.P. to some other fun activity. Dale stated that he very much enjoyed these recent visits with S.P., which went very well and lasted about four hours each.

Dale testified that he and Carol have a good relationship with S.P., and that they love S.P. and he loves them. Dale asked the trial court to award them grandparent visitation, and said that he did not oppose supervised visitation until S.P. can get acclimated to visiting them again. Dale stated that his goal is to get unsupervised overnight visitation sometime in the not-too-distant future.

Dale described S.P. as a very polite, respectful child, and he indicated that he does not have any concerns about Summer's parenting abilities. However, he stated that at times Summer has denied him and his wife visitation, and he thought that she should not have the right to keep S.P. from visiting them. Dale thought that it was not right for a child to not be able to see his grandparents.

Summer testified that the paternal grandparents have had a very limited and almost non-existent relationship with S.P. She further stated that she did not believe that the absence of this relationship had negatively influenced the child. Summer described S.P. as a normal, happy child who has friends and makes good grades.

S.P. testified that he attends school in Fort Smith and is doing well. He stated that he likes all of his teachers and has some friends. S.P. indicated that he likes visiting his grandparents as long as his mother is there. However, he expressed considerable anxiety about having any unsupervised visitation with them or going to his grandparents' house. S.P. testified:

Well, I think that I shouldn't go to my grandparent's house. I don't want to go because like something like Lee might come in or something like that. Lee's my first dad. I decided to call him that. I like being around my grandparents. I would probably just like to go somewhere or, go to a park or something and play with them. But, I don't want to go to their house.... I do not want to spend time with my grandparents without my mom there, because I do not feel safe without my parents (mother and stepfather) being there.... Well, because anything could really happen. I just don't really feel safe.

The trial court entered an order awarding grandparent visitation to Dale and Carol on March 14, 2011. The visitations were to occur every three months over the next six months. After that, the visits were to be every other month for at least four hours each, with the visitations alternating between Conway and Fort Smith. The trial court ordered that the grandparent visitation be supervised by an appropriate party until further rulings by the court.

In this appeal, Summer challenges the sufficiency of the evidence supporting the trial court's decision to award grandparent visitation. Summer contends that the appellees failed to establish a significant and viable relationship with the child as required by Ark.Code Ann. § 9–13–103(c)(2)(A). Summer further argues that the appellees failed to establish that visitation with them was in S.P.'s best interest as required by subsection 9–13–

103(c)(2)(B). Finally, Summer complains that the trial court failed to comply with the terms of the Arkansas Grandparental Visitation Rights Act because it failed to state in writing the factors it considered in granting grandparent visitation as mandated by subsection 9–13–103(f)(1).

We do not agree with Summer's contention that Dale and Carol failed to present evidence of a significant and viable relationship with the child. Arkansas Code Annotated section 9–13–103(d)(1)(C) provides that this may be established by proof that the petitioner had regular or frequent contact with the child for at least twelve consecutive months. In her argument, Summer acknowledges that early in S.P.'s life there may have been twelve consecutive months of regular and frequent contact with his paternal grandparents. But she asserts that this regular contact was severed beginning a few years ago, shortly after she divorced S.P.'s father. However, in *Brandt v. Willhite*, 98 Ark. App. 350, 255 S.W.3d 491 (2007), we were faced with a similar situation where the grandparents had regular and significant contact over the first several years of the child's life, which was subsequently lost over the next several years. We held there that a significant and viable relationship had been established by the grandparents and declined to extend the statute to require that the twelve-month period of frequent contact occur close in time prior to the grandparents' petition for visitation. *Id.* Similarly, in the case at bar, because Dale and Carol established regular contact with S.P. for at least twelve consecutive months during S.P.'s life while his parents were still married, Dale and Carol proved a significant and viable relationship under the statute even though they have not had recent regular contact with the child.

However, we agree with Summer's contention that Dale and Carol failed to rebut the applicable statutory presumption because they failed to establish that grandparent visitation was in S.P.'s best interest. We also agree that the trial court failed to comply with the requirement that it make written findings supporting its decision to award grandparent visitation.

Pursuant to Ark.Code Ann. § 9–13–103(e), to establish that visitation with the petitioner is in the best interest of the child, the petitioner must prove (1) the petitioner has the capacity to give the child love, affection, and guidance; (2) the loss of the relationship between the petitioner and the child is likely to harm the child; and (3) the petitioner is willing to cooperate with the custodian if visitation with the child is allowed. In the case at bar, we agree with Summer's contention that the appellees failed to establish the second prong of this test because there was a lack of evidence that the loss of their relationship with S.P. was likely to harm the child. The trial court made no written findings of the factors it considered in awarding grandparent visitation, and even had it found that the loss of the relationship between S.P. and his grandparents would likely result in harm to S.P., the testimony at trial does not support such a finding.

The testimony showed that, while Dale and Carol had regular contact with S.P. during the early years of his life, there was very little contact between them beginning soon after S.P.'s parents divorced in February 2007. Since that time, S.P.'s relationship with his paternal grandparents has been tenuous at best, and S.P. expressed anxiety about visiting them due to his fear of his father. Despite a prior order allowing Dale and Carol to contact S.P. through the mail and send gifts, Dale acknowledged that they rarely exercised such contact. While S.P.'s counselor recommended grandparent visitation, she also stated that this would result in increased

anxiety for S.P. and the need for additional therapy sessions. She further acknowledged, along with the other witnesses, that S.P. was thriving in the custody of Summer despite the very limited contact with his grandparents over the past few years. At the time of the hearing, the evidence showed S.P. to be a smart, well-adjusted, and happy child. Because Dale and Carol did not establish that the loss of the relationship was likely to harm S.P., and therefore failed to rebut the statutory presumption that Summer's decision limiting their visitation was in S.P.'s best interest, we hold that the trial court abused its discretion in awarding grandparent visitation. *See Bowen v. Bowen,* 2012 Ark. App. 403, 421 S.W.3d 339, *petition for review filed* (award of grandparent visitation reversed where grandparents failed to show that loss of the relationship would likely cause harm to their grandchildren).

Reversed and dismissed.

VAUGHT, C.J., and ABRAMSON, J., agree.