
# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–15–1036

| | |
|---|---|
| KAYLA SHORES (now FITTS) | **Opinion Delivered** MAY 4, 2016 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. DR–15–566] |
| V. | |
| MARILYN SUE LIVELY AND ROBERT ALAN LIVELY | HONORABLE STACEY ZIMMERMAN, JUDGE |
| APPELLEES | REVERSED AND DISMISSED |

## DAVID M. GLOVER, Judge

This is a grandparent–visitation case. Appellant Kayla Shores Fitts appeals the circuit court's decision to grant appellees Marilyn and Robert Lively visitation with their grandchildren, K.L.1 and K.L.2. Fitts argues the trial court erred (1) in finding the Livelys had established a significant and viable relationship with the children; (2) in finding it was in the best interest of the children to allow visitation; and (3) in allowing the children's father, Jonathan Lively, who was not a party to the visitation proceeding, to make a closing statement. We find merit in Fitts's argument on the second point; we reverse the trial court's grant of visitation.

Fitts and the Livelys' son, Jonathan, are the biological parents of K.L.1 and K.L.2. K.L.1 was born on September 3, 2010, and K.L.2 was born on February 28, 2012. In June 2014, while Jonathan was incarcerated, his parental rights were terminated by the Washington

SLIP OPINION

County Circuit Court. The termination decision was reversed and remanded by our court in *Lively v. Arkansas Department of Human Services*, 2015 Ark. App. 131, 456 S.W.3d 383.

Fitts and Jonathan divorced in August 2014. The Livelys filed their petition for grandparent visitation in April 2015; at that time, Jonathan was still incarcerated, and his parental-rights and visitation case was then pending. Fitts's motion to consolidate Jonathan's pending parental-rights and visitation case with the Livelys' grandparent-visitation case was granted. At the time of the hearing, Fitts's new husband, Colby Fitts, had an outstanding petition to adopt K.L.1 and K.L.2.

The circuit court initially heard the Livelys' petition for grandparent visitation on July 10, 2015, and determined the Livelys met the burden set out in the grandparent-visitation statute; however, the circuit court ordered family counseling to take place between the Livelys and the children in order to determine what type of visitation should occur between them and the children. The circuit court set a final hearing for September 2015 to determine if the counseling was beneficial. An order to this effect was filed on July 28, 2015.[1]

Fitts appealed the circuit court's grant of visitation on July 30, 2015. She also refused to set counseling appointments; in response, the Livelys filed a motion to hold her in contempt. The circuit court held a hearing on September 18, 2015. The Livelys argued the July 28 order was not a final order but merely a temporary order because it contemplated a

---

[1]It was during this hearing that the circuit court made the ruling that forms the basis for Fitts's third point on appeal. Over Fitts's objection, the circuit court allowed Jonathan Lively to make a closing statement in the grandparent-visitation proceeding, even though he was not a party to that proceeding. As explained *infra*, due to the disposition of Fitts's other points, it is not necessary to address this point.



final hearing in September 2015. Fitts argued the circuit court found that the Livelys had met their burden of proof for grandparent visitation in the July 2015 hearing and it was therefore a final order, which she was appealing. The circuit court agreed it had previously found that the Livelys met their burden of proof but also agreed no specific visitation had been set forth due to the order for counseling and the need to ease into visitation. The circuit court declined to hold Fitts in contempt; it set specific, supervised visitation for the first Saturday of every month from 1:00 p.m. to 3 p.m. An order to this effect was filed on September 18, 2015, and Fitts filed her notice of appeal on the same day.

*Standard of Review*

As a rule, when the setting of visitation is at issue, we will not reverse the trial court absent an abuse of discretion. *Hollingsworth v. Hollingsworth*, 2010 Ark. App. 101, 377 S.W.3d 313. Abuse of discretion is discretion applied thoughtlessly, without due consideration, or improvidently. *Id.* The "clearly erroneous" standard of review is applied to a trial court's findings of fact in domestic-relations cases; however, a trial court's conclusions of law are given no deference on appeal. *Id.* A trial court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire record, is left with a definite and firm conviction that a mistake has been committed. *Painter v. Kerr*, 2009 Ark. App. 580, 336 S.W.3d 425. Due deference is accorded to the superior position of the trial court to view and judge the credibility of the witnesses; this deference is even greater in cases involving children, as a heavier burden is placed on the judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the



children. *Id.*

The Livelys have standing to petition for grandparent visitation because the marital relationship between Fitts and Jonathan was severed by divorce. Ark. Code Ann. § 9-13-103(b)(1) (Repl. 2015). Our grandparent-visitation statute provides there is a rebuttable presumption that a custodian's decision to deny or limit the petitioners' visitation is in the best interest of the child. Ark. Code Ann. § 9-13-103(c)(1). Petitioners bear the burden of rebutting that presumption by a preponderance of the evidence; to do so, the petitioners must show that they have established a "significant and viable relationship" with the children *and* that visitation with petitioners is in the children's best interest. Ark. Code Ann. § 9-13-103(c)(2)(A)–(B) (emphasis added).

### Significant and Viable Relationship

We must first discuss whether the Livelys had a significant and viable relationship with K.L.1 and K.L.2, because if there is no significant and viable relationship, it is not necessary to make a best-interest determination. *See Bowen v. Bowen*, 2012 Ark. App. 403, 421 S.W.3d 339 (to rebut the presumption that the custodian's denial or limitation of visitation is in the best interest of the child, the petitioners are first required to establish by a preponderance of the evidence that they had established a significant and viable relationship with the children).

To establish a significant and viable relationship, the Livelys were required to prove, by a preponderance of the evidence, that the children (1) resided with the petitioners for at least six months with or without the current custodian present; (2) the petitioners were the caregivers to the children on a regular basis for at least six consecutive months; *or* (3) the

4

petitioners had frequent or regular contact with the children for at least twelve consecutive months. Ark. Code Ann. § 9-13-103(d)(1)(A)–(C) (emphasis added).

With regard to K.L.1, Fitts admits in her argument that she and K.L.1 lived with the Livelys for at least the first six months of K.L.1's life, which is sufficient to establish a significant and viable relationship under Arkansas Code Annotated section 9-13-103(d)(1)(A). Nevertheless, Fitts contends those first six months of K.L.1's life should not qualify as evidence of a significant and viable relationship under these circumstances because K.L.1 is now five years old and has no memory of the Livelys. She is incorrect in this assertion. In *Brandt v. Willhite*, 98 Ark. App. 350, 255 S.W.3d 491 (2007), the appellant, who was the custodial father, asked our court to hold that the grandparent-visitation statute required the twelve consecutive months of regular contact (one of the alternatives to establish a significant and viable relationship under Arkansas Code Annotated section 9-13-103(d)(1)(C)), to occur close in time prior to a petition for visitation from grandparents. We declined to do so, holding that we could not, "under the flag of interpretation," add a significant additional qualification to the law enacted by the General Assembly. Fitts is asking our court now to do the same thing the appellant in *Brandt* requested and our court refused to do—add a significant additional qualification to the General Assembly's statute that is simply not there. The statute requires only that the children have resided with petitioners for at least six months with or without the current custodian present to establish a significant and viable relationship—there is no requirement that those six months be close in time to the date the grandparents file for visitation rights. Therefore, we hold that the circuit court did not clearly err in determining

SLIP OPINION

the Livelys established a significant and viable relationship with K.L.1.

The question answer to whether the Livelys established a significant and viable relationship with respect to K.L.2, however, is more complicated. In its findings at the July 10, 2015 hearing, the circuit court stated from the bench it believed the Livelys had shown that they had a significant and viable relationship with the children and that they had proved by a preponderance of the evidence the child (the circuit court did not specify which one) had resided with the petitioners for at least six consecutive months, "so check that one off the box." The July 28, 2015 order simply stated that "a significant and viable relationship existed between the Petitioners and their grandchildren at issue in this cause of action."

The evidence was conflicting as to how long the children lived with the Livelys after K.L.2's birth. Marilyn Lively testified Fitts, Jonathan, and the children lived with them three or four months after K.L.2's birth; Fitts testified she and the children moved out of the Livelys' house when K.L.2 was a month old. Even taking Marilyn Lively's testimony as true, that K.L.2 lived in her home until he was four months old, that does not establish the requisite six-month period required by Arkansas Code Annotated section 9-13-103(d)(1)(A).

However, the Livelys could establish a significant and viable relationship with K.L.2 under Arkansas Code Annotated section 9-13-103(d)(C) by showing they had frequent or regular contact with K.L.2 for at least twelve consecutive months. Again, the testimony with respect to the frequency of contact was hotly disputed. Marilyn testified that after the children moved out of her house (which she contends was when K.L.2 was four months old), she went by their house if not every day, at least every other day, to see them until the first part of

September 2013, which was the last time Marilyn said she had seen her grandchildren. Appellee Robert Lively testified that he had a day-to-day relationship with K.L.2 when he lived in his house after he was born and that when the children moved out of the house, he continued to have regular visits with them, although not as regular as Marilyn's visits. Fitts disputed that the Livelys continued to see the children on a regular basis after she moved out of the Lively's house. Although she admitted the Livelys had some visits, and, although, according to her, she allowed Robert Lively to see the children more than she allowed Marilyn Lively to see them, Fitts asserted there was a six-month period from March to August 2012 when the Livelys did not see the children at all; that they began to see the children again in August 2012 due to an attempted reconciliation between Jonathan and herself; that she and Jonathan separated for good in February 2013; and that the last time the Livelys saw the children was July 4, 2013, not September 2013.

K.L.2 was born February 28, 2012. The testimony was hopelessly at odds with regard to the type of contact and the frequency of contact the Livelys had with K.L.2. Given Marilyn Lively's testimony that Fitts and the children lived with the Livelys for four months after K.L.2's birth, and taking Marilyn Lively's testimony as true that she saw her grandchildren every other day until September 2013, this testimony supports the circuit court's finding that the Livelys had established a significant and viable relationship with K.L.2, and we cannot say that the circuit court's finding was clearly erroneous.

*Best Interest*

Even though the circuit court did not clearly err in finding the Livelys had established

SLIP OPINION

a significant and viable relationship with the children, we hold that this case must be reversed because the Livelys did not prove by a preponderance of the evidence that visitation was in the children's best interest. To prove visitation was in the children's best interest, the Livelys had to show they had the capacity to give the children love, affection, and guidance; the loss of the relationship between themselves and the children was likely to harm the children; and they were willing to cooperate with Fitts if visitation was allowed.[2] Ark. Code Ann. § 9-13-103(e)(1)–(3).

The best interest of the child cannot be proved simply by showing a meaningful or substantial relationship existed and that the grandparents desired to further that relationship. *Bowen*, 2012 Ark. App. 403, 421 S.W.3d 339. Additionally, a trial court cannot override a fit parent's wishes based solely on its personal view of the children's best interest. *Id.*

With regard to best interest of the children, there was testimony from Marilyn that she would work with Fitts if granted visitation; Fitts testified she had never had a problem with Robert. We also have no doubt the Livelys have the capacity to give the children love and affection. However, the testimony at the visitation hearing raises concerns that the guidance portion of the best-interest requirement is missing, especially as to Marilyn, a concern the

---

[2] We note that Arkansas Code Annotated section 9-13-103(f)(1) requires that an order granting or denying grandparent visitation shall be in writing and shall state any and all factors considered by the court in its decision to grant or deny visitation. Here, the circuit court made no written finding with regard to the best interests of the children. Nevertheless, that is not an impediment to reversing a grant of grandparent visitation if the record would not support such a finding, and there is no basis on this record to affirm the trial court's decision. *See Oldham v. Morgan*, 372 Ark. 159, 271 S.W.3d 507 (2008); *Harrison v. Phillips*, 2012 Ark. App. 474, 422 S.W.3d 188.

circuit court stated it had as well. Although she had no burden of proof at the visitation hearing, Fitts explained and expounded on her reasons why she had concerns about her children being around the Livelys, especially Marilyn. Fitts testified Marilyn condoned Jonathan's drug abuse, to the detriment of the children; Marilyn shared her prescription drugs with Jonathan and her other son, Matthew; Marilyn allowed Matthew to drive with K.L.1 in the car even though he was high and had no driver's license; both Marilyn and Robert refused to stop smoking after K.L.1 was born and they lived with the Lively's; and when K.L.1 was nine months old, K.L.1 had an allergic reaction to peanuts, and Marilyn called Fitts at work to come get her instead of taking K.L.1 to the hospital because Marilyn and Robert were "high." Disturbingly, none of this testimony was refuted by the Livelys.

Furthermore, there is no evidence in the record that the loss of the relationship between the Livelys and the children was likely to harm the children. There is a substantial difference between a relationship benefiting a child and the denial of that relationship harming the child. *Favano v. Elliott*, 2012 Ark. App. 484, 422 S.W.3d 162. This case is similar to *Brandt v. Willhite*, *supra*, in that a significant period of time has passed since the Livelys had a significant and viable relationship with the children. By the time the visitation petition was heard in July 2015, there had been no contact between the Livelys and the children for approximately two years, and Fitts testified that neither child remembered the Livelys. As in *Brandt*, we hold that the circuit court clearly erred in finding that the Livelys had proved that the children were likely to be harmed by the loss of a relationship that, according to Fitts, the children did not even recall. Therefore, it was an abuse of discretion to award visitation,

as the Livelys failed to prove it was in the children's best interest for visitation to occur.

Because we reverse the grant of grandparent visitation based on the lack of best interest, it is not necessary to discuss Fitts's third point of appeal—that the trial court erred in allowing Jonathan to make a closing argument during the grandparent-visitation hearing when he was not a party to that proceeding (see footnote 1).

Reversed and dismissed.

BROWN, J., agrees.

GRUBER, J., concurs.

**RITA W. GRUBER, Judge, concurring.** I agree with the majority that, because the record before us lacks any evidence supporting the likelihood that the children would be harmed from a loss of relationship with the grandparents, the circuit court clearly erred in making such a finding.

I write separately to express my concern that the circuit court ignored our statutory requirement that a written order denying or granting grandparent visitation "shall state any and all factors considered by the court in its decision to grant or deny visitation under this section." Ark. Code Ann. § 9-13-103(f)(1) (Repl. 2015). *See Schwartz v. Lobbs*, 2016 Ark. App. ___ (reversing the circuit court's denial of grandparent visitation because the order failed to state the factors the court had considered in reaching its decision). Here, the court did not set forth the factors it considered in deciding to grant visitation, leaving us with nothing to review and preventing us from determining "on the entire record" whether "a mistake has been committed." *Painter v. Kerr*, 2009 Ark. App. 580, at 5, 336 S.W.3d 425, 429. The

10



shortcoming of the order has prevented our thorough review of the best-interest finding.

*Elizabeth J. Finocchi*, for appellant.

*David Hogue*, for appellees.