Cite as 2022 Ark. App. 488

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-22-36

| | | |
|---|---|---|
| MELISSA HORN | | **Opinion Delivered** November 30, 2022 |
| | APPELLANT | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30DR-08-255] |
| V. | | |
| | | HONORABLE STEPHEN L. SHIRRON, JUDGE |
| DAVID CALDWELL | | |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

This is a grandparent-visitation case. Appellant Melissa Horn appeals from the trial court's order denying Melissa grandparent visitation with her maternal granddaughter, Minor Child, who was thirteen years old when Melissa's petition for grandparent visitation was filed.[1] On appeal, Melissa argues that the trial court erred in finding that she failed in her burden to prove that grandparent visitation was in Minor Child's best interest. We affirm.

I. *Grandparent Visitation*

---

[1]Minor Child's parents, appellee David Caldwell and Torie Moore, never married, and Torie died several months before Melissa's petition was filed.

A grandparent may petition a trial court for reasonable visitation rights with respect to her grandchild if the child is illegitimate and the petitioner is a maternal grandparent of the illegitimate child. Ark. Code Ann. § 9-13-103(b)(2) (Repl. 2020). The grandparent-visitation statute provides that there is a rebuttable presumption that a custodian's decision to deny or limit the petitioner's visitation is in the best interest of the child. Ark. Code Ann. § 9-13-103(c)(1). The grandparent petitioner bears the burden of rebutting the presumption by a preponderance of the evidence; to do so, the petitioner must show that she has established a "significant and viable relationship" with the child and that visitation with the petitioner is in the child's best interest. Ark. Code Ann. § 9-13-103(c)(2)(A)–(B).

To establish a significant and viable relationship with the child, Arkansas Code Annotated section 9-13-103(d) provides:

> (d) To establish a significant and viable relationship with the child, the petitioner must prove by a preponderance of the evidence the following:
>
> (1) The child resided with the petitioner for at least six (6) consecutive months with or without the current custodian present;
> (2) The petitioner was the caregiver to the child on a regular basis for at least six (6) consecutive months;
> (3) The petitioner had frequent or regular contact with the child for at least twelve (12) consecutive months; or
> (4) Any other facts that establish that the loss of the relationship between the petitioner and the child is likely to harm the child.

To establish that visitation with the petitioner is in the best interest of the child, Arkansas Code Annotated section 9-13-103(e) provides:

> (e) To establish that visitation with the petitioner is in the best interest of the child, the petitioner shall prove by a preponderance of the evidence the following:

(1) The petitioner has the capacity to give the child love, affection, emotional support, and guidance;

(2) The loss of the relationship between the petitioner and the child is likely to:
    (A)    Harm the child;
    (B)    Cause emotional distress to the child;
    (C)    Result in the emotional abuse of the child; or
    (D)    Result in the emotional neglect of the child;

(3) The petitioner is willing to cooperate with the custodian if visitation with the child is allowed; and

(4) Awarding grandparent visitation would not interfere with the parent-child relationship.

At the conclusion of the evidence, the trial court took the case under advisement. Subsequently, as discussed more fully below, the trial court determined that Melissa did establish a significant and viable relationship with the child. However, the trial court determined that "under the circumstances in this case, the Court does not find that Intervenor, Melissa Horn, has rebutted [the] presumption by a preponderance of the evidence to show that it is in the best interests of Minor Child for her to have visitation" and denied visitation. Melissa appeals this decision.

## II. *Standard of Review*

In domestic-relations cases, the "clearly erroneous" standard of review is applied to a trial court's findings of fact. *Hollingsworth v. Hollingsworth*, 2010 Ark. App. 101, 377 S.W.3d 313. A trial court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire record, is left with a definite and firm conviction that a mistake has been committed. *Id.* As a rule, when the setting of visitation is at issue, we will

not reverse the trial court absent an abuse of discretion. *Shores v. Lively*, 2016 Ark. App. 246, 492 S.W.3d 81. Abuse of discretion is discretion applied thoughtlessly, without due consideration, or improvidently. *Id.* Due deference is accorded to the superior position of the trial court to view and judge the credibility of the witnesses; this deference is even greater in cases involving children because a heavier burden is placed on the judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the child. *Id.*

III. *The Trial Court Proceedings*

Minor Child was born on July 3, 2007. Her parents, appellee David Caldwell and Torie Moore, were never married and were not in a relationship when Minor Child was born. Melissa Horn is Torie's mother and Minor Child's maternal grandmother. After Minor Child was born, Torie was awarded primary custody subject to David's visitation, which was every other weekend and alternating two-week periods in the summer. This custody arrangement remained in effect until October 16, 2020, when an agreed order was entered awarding custody of Minor Child to David subject to Torie's supervised visitation. At that time, Torie was battling drug addiction. Torie died just six days after the agreed order changing custody was entered. Since then, Minor Child has continued in David's custody and resides with David, his wife, and Minor Child's two half siblings.

About five months after the agreed order changing custody to David was entered, Melissa filed a petition for grandparent-visitation rights. In her petition, Melissa alleged that since Torie's death, David had allowed Melissa only extremely limited access and visitation

4

with Minor Child. Melissa stated that Minor Child had already suffered the loss of her mother and was now suffering the loss of a relationship with her maternal grandmother. Melissa alleged that she has a significant and viable relationship with Minor Child and that it is in Minor Child's best interest to have regular visitation with Melissa. David filed a response to Melissa's petition, asking that it be denied.

Prior to the trial in this case, David served the following requests for admission on Melissa:

> REQUEST FOR ADMISSION NO 1: Admit or deny that you gave a cell phone to Lindsey West or any other teacher at the school the minor child attends.
>
> REQUEST FOR ADMISSION NO 2: Admit or deny that you called the Department of Human Services or the child abuse hotline and made a report of the minor child being abused or neglected.
>
> REQUEST FOR ADMISSION NO 3: Admit or deny that you coached the minor child to say that the First Defendant, David Caldwell and/or his wife took food away from her.
>
> REQUEST FOR ADMISSION NO 4: Admit or deny that you called law enforcement to conduct a welfare check on the minor child.

Melissa filed untimely answers to David's requests for admission, wherein she denied requests for admission 1 and 3 but admitted requests for admission 2 and 4. However, because Melissa's answers were untimely, David filed a motion asking that the requests be deemed admitted.

The trial was held on June 28, 2021. Before the trial began, the trial court granted David's motion and ruled that David's requests for admission were deemed admitted as a result of Melissa's failure to timely answer the requests.

Melissa testified that she has been involved in Minor Child's life since Minor Child was born. She stated that both Torie and Minor Child had lived with her in her home for the first year after Minor Child was born. Melissa also stated that, several years ago, she lived in Torie's home with Torie and Minor Child for about a one-year period. Melissa stated that she and Minor Child are very close and that she would take Minor Child shopping, attend her ball games and extracurricular activities, and sometimes let her spend the night. Melissa described herself as a stabilizing and constant factor in Minor Child's life and stated that Minor Child had never known life without her.

Melissa indicated that since Torie's death in October 2020, David has significantly restricted her contact with Minor Child. Melissa stated that since Torie's death, she has seen Minor Child only four times. Melissa stated that she has not been allowed to see Minor Child at all since March 4, 2021, which was a few weeks before she filed her petition for grandparent visitation. Melissa maintained that she has tried to cooperate with David in requesting visitation but that he told her Minor Child "needed to learn how to live a new life without [me] and without her mom." Melissa stated she was not trying to "supersede or take over" for David but that she thought it was in Minor Child's best interest for Melissa to have visitation and a continued relationship with her.

Although David had provided a cell phone to Minor Child, on cross-examination Melissa admitted that, over David's wishes, she had "snuck" Minor Child another phone.[2]

---

[2]This was a phone that Torie had given to Minor Child before Torie's death and which David said Minor Child could no longer have.

6

Melissa admitted this was done so Minor Child could text freely and Melissa's text exchanges with Minor Child would not be monitored by David. This other phone provided by Melissa allowed Minor Child to access social-media sites that David had blocked on the phone he provided to Minor Child. And on this phone, Minor Child made inappropriate social-media posts, although Melissa claimed she had told her not to do so.

Some of the text messages that were exchanged between Melissa and Minor Child were introduced at trial. In some of these texts, Melissa admonished Minor Child to be careful to hide the phone from David and to make sure he did not catch her with it. In one text, Melissa asked Minor Child, "Does your dad drink every night?" and "Does he get mean when he drinks?" Melissa followed that up with, "Please don't tell anyone, I mean anyone. I'm going to a lawyer." Melissa also texted, "You need a little camera that they can't see and take pics of everything. I'll see what I can find." Melissa testified that this text was only meant as a joke.

There was another text exchange in December 2020 when Melissa asked if Minor Child was going hungry. Minor Child replied, "I was eating and they just kept coming up and taking my food." However, when Melissa offered to bring her some food, Minor Child stated that she did not need any.

The phone that Melissa "snuck" to Minor Child was confiscated by an officer at Minor Child's school on March 4, 2021, pursuant to a school policy prohibiting cell phones. On the next day, Melissa filed a hotline report with the Arkansas Department of Human Services (DHS) alleging that Minor Child was the victim of physical abuse and inadequate

7

food in the home. Melissa also asked deputies to make a welfare check of Minor Child's home. Melissa testified that she took these actions because Minor Child was afraid of her father and was asking for help to get out of his house. Melissa's allegations resulted in a six-week investigation by DHS, Division of Children and Family Services.

Michael Proch is the DHS investigator who investigated Melissa's allegations of physical abuse and inadequate food. Mr. Proch testified that he spoke with both parents, all the children in the home, and several school staff members. Mr. Proch testified that Minor Child told him during the investigation that David would slap all the children and that he had punched Minor Child in the arm, leaving a bruise. However, the other children in the home made no allegations of being slapped, and Mr. Proch stated that Minor Child's bruise marks appeared to be too far apart to have been caused by a fist.[3] Mr. Proch stated that he observed no potential anger problems with David, and he noted that his conversation with Minor Child occurred on the day after her phone had been taken from her and she had gotten in trouble with her father. Mr. Proch concluded that Melissa's allegations were unsubstantiated, and the case was closed.

David testified that he has been in Minor Child's life since she was born and had exercised visitation with her before being awarded custody shortly before Torie's death. David stated that after Torie died, he wanted Minor Child to remain involved with Torie's side of the family and that he "wasn't going to keep them away as long as everybody could

---

[3]In David's testimony, he denied ever slapping or punching any of the children.

8

act appropriately and everybody could get along." David denied Melissa's claim that he had told Melissa that Minor Child needed to learn how to live without her mother and without Melissa. David stated that he allowed Melissa to visit Minor Child about eight times between October 2020 and March 4, 2021.

David testified that he restricted Melissa's visitation and contact with Minor Child after March 4, 2021, when it was discovered that Melissa had given Minor Child another cell phone against David's express wishes. David stated that Melissa could communicate with Minor Child at any time on the phone he had given her and that at least twice he had told Melissa not to give Minor Child the other phone. David testified:

> After multiple attempts of asking [Melissa] to work with me and not give [Minor Child] that phone, she still went behind my back and gave it to her, not only just sneaking it to her at her house, giving it to a teacher or her friends sneaking her that phone, telling her to lie to me and hide stuff and encouraging that, "I hope you don't get caught, because you'll get in trouble." That's not right for a parent, a grandparent, anybody to tell a kid, "Go lie to your parent." The inappropriate pictures on social media, I showed [Melissa] why I didn't want her to have that. [Melissa] still gave her the phone and she still posted pictures, so she had no regard for what Melissa told her, "Well, don't post that." She did it anyway.

Although David opposed Melissa's petition for court-ordered grandparent visitation, he testified that he had no intention of keeping Melissa out of Minor Child's life, but he wanted Melissa to abide by his rules and wishes. David stated that he planned to get Melissa reinstated with Minor Child with supervised phone visits and eventually supervised visits. He stated, "I would like to be just involved with all of it from now on."

After the trial, Minor Child's attorney ad litem, Willie Perkins, submitted a written report with his recommendations. Mr. Perkins recommended that Melissa be awarded

grandparent visitation with Minor Child on alternate weekends as well as certain periods during the summer and holidays.

Mr. Perkins stated in his report:

This Attorney further recommends that all parties cease and desist from the use of social media to discuss this matter or any issues about each other, that the Grandmother follow the Father's rules to Minor Child having a cell phone and proper supervision of the cell phone, cooperate with the Father and speak no ill will of the Father in front of the child and that all parties have direct access to the child's counselor and counselor records and participate in counseling if requested by the counselor.

. . . .

The Petitioner (Melissa) has established a significant and viable relationship with the child for whom she is requesting visitation and visitation with the Petitioner and the rest of her deceased mother's family is in the child's best interest because the Petitioner and her mother's family had had frequent and regular contact with the child for the entire 13 years of her life. It was a tragedy for the child to lose her mother and that is compounded by being cut off from her mother's family completely since October of 2020 and I'm sure she has been unable to properly grieve the loss of her mother.

On August 2, 2021, the trial court issued a detailed order denying Melissa's petition for grandparent visitation. The trial court first determined that Melissa had standing to petition for grandparent visitation, then the court made the following findings:

[3.] Under subsection [9-13-103] (c)(1), the statute says, "there is a rebut[able] presumption that a custodian's decision denying or limiting visitation to the petitioner is in the best interest of the child." It is without question when there is a presumption within a statute under the laws of the State of Arkansas that the burden of proof shifts to the petitioner. In this circumstance, the burden falls on [Melissa] to prove by a preponderance of the evidence that certain things would warrant her having visitation in this case.

The Intervenor, Melissa Horn, has to prove, under subsection (c)(2)(A), in order to rebut the presumption by a preponderance of the evidence, the following:

10

that the petitioner has established a significant and viable relationship with the child for whom he or she is requesting visitation. Then, in subsection (d), there are certain elements that the Court can evaluate to determine whether or not a significant and viable relationship with the child has been proven. Those factors include (1) the child resided with the petitioner for at least six (6) consecutive months with or without the current custodian; (2) the petitioner was the caregiver of the child on a regular basis for at least six (6) consecutive months; (3) the petitioner had frequent or regular contact with the child for at least twelve (12) consecutive months; or (4) any other factor that establishes the loss of the relationship between the petitioner and child is likely to harm the child.

4. In this case, the Court finds that the facts were essentially unrefuted that there was a long-standing relationship between the Intervenor, Melissa Horn and [Minor Child], which lasted at least twelve (12) consecutive months through the course of her thirteen (13) years of life. The testimony was that the Intervenor, Melissa Horn, had regular and constant contact with [Minor Child]. The Court finds that the Intervenor, Melissa Horn, has met the burden of proving by a preponderance of the evidence that there was a significant and viable relationship based on the factors.

5. The Court then has to turn to the next factor set out under subsection (c)(2)(B) where the burden is on the Intervenor, Melissa Horn, to prove that visitation with the petitioner is in the best interests of the child. Section (e) of the statute reads, "to establish that visitation with the petitioner is in the best interest of the child, the petitioner shall prove by a preponderance of the evidence the following: (1) that petitioner has the capacity to give the child love, affection, emotional support, and guidance." The Court does not question that the Intervenor, Melissa Horn, loves [Minor Child]. However, this Court has serious concerns as to whether or not the Intervenor, Melissa Horn, has the ability to give proper guidance to this child.

The statute goes on to read in section (2), "The loss of the relationship between the petitioner and the child is likely to (a) harm the child, (b) cause emotional distress to the child, (c) result in emotional abuse of the child, or (d) result in the emotional neglect of the child." When a relationship is not fostered or a child loses a relationship they have had for many years in their life, it would potentially harm the child. The next factor that the Court is required to look at is whether the petitioner is willing to cooperate with the custodian if visitation with the child is allowed. The Court finds that the petitioner is not willing to do that. The Intervenor, Melissa Horn, has chosen to deny, dispute, refute, interfere with, interject herself into the relationship with this child and this child's father by providing a cell phone in contravention of the child's father's desires and his stated intention. The Intervenor,

11

Melissa Horn, has snuck around and created a division between the child and the child's father unnecessarily by subterfuge and scheming with the child. The Court finds Melissa Horn's actions are absolutely inappropriate and unacceptable.

From the testimony, it is clear that the Intervenor, Melissa Horn, will not cooperate with the custodian if visitation with the child is allowed. The Intervenor, Melissa Horn, has shown her intent not to cooperate. The text messages were clear as well as the other evidence being abundantly clear to this Court that the Intervenor, Melissa Horn, does not have an intent to cooperate.

6.      Subsection 4 "awarding grandparent visitation would not interfere with the parent/child relationship." It is obvious to the Court that the visitation by [Minor Child] with the Intervenor, Melissa Horn, has been tested by the father, David Caldwell, and has resulted in interference by Melissa Horn with the parent/child relationship. The father, David Caldwell, has the right to discipline his child as he sees fit and to treat any circumstance within the bounds of the laws of the State of Arkansas, as far as discipline and punishment goes for a parent and a child. The father, David Caldwell, has laid out parameters for [Minor Child]. One of those parameters was that there were problems with her and social media and he had done everything that he could to protect her from that and the Court applauds him for that as a parent, but Intervenor, Melissa Horn, chose to interfere with that. Intervenor, Melissa Horn, provided a phone that the child accessed when visits were voluntarily allowed by the father, David Caldwell, even when those visits did not have to be allowed.

7.      Intervenor, Melissa Horn, has failed to rebut the presumption that is presented under the law and by her own actions, she has undermined her own case in this circumstance.

8.      The Court considered the ad litem's position and opinion and the Court agrees generally grandparents should have visitation with their grandchildren. However, under the circumstances in this case, the Court does not find that Intervenor, Melissa Horn, has rebutted this presumption by a preponderance of the evidence to show that it is in the best interests of [Minor Child] for her to have visitation. Because of her actions, the Intervenor, Melissa Horn, has undermined her own case.

Melissa now appeals from the trial court's order denying grandparent visitation.

IV. *Analysis*

12

In this appeal, Melissa agrees with the trial court's finding that she has established a significant and viable relationship with Minor Child as required by section 9-13-103(c)(2)(A) of the grandparent-visitation statute. However, Melissa challenges the trial court's finding that she failed to prove that grandparent visitation was in Minor Child's best interest as required by section 9-13-103(c)(2)(B). Melissa contends that she rebutted the statutory presumption by proving both of these prongs, and thus that she was erroneously denied grandparent visitation.

As an initial matter, before addressing the four factors in Ark. Code Ann. § 9-13-303(e) that are required to be proved to establish that grandparent visitation is in the child's best interest, we observe that Melissa first asks this court to summarily reverse the trial court's decision without addressing these factors based on her claim that David admitted in his testimony that grandparent visitation was in Minor Child's best interest. We do not agree with this argument.

On direct examination, David testified that, although he opposed court-ordered grandparent visitation, he planned to begin supervised phone visits between Melissa and Minor Child and eventually allow supervised visits. During David's ensuing cross-examination by Melissa's counsel, the following colloquy took place:

> Q:    Mr. Caldwell, so your plan, now that we've heard for the first time today, is to incorporate Ms. Horn back into Minor Child's life?
>
> A:    Correct.
>
> Q:    So, you acknowledge that it is in Minor Child's best interest to have visitation with Ms. Horn?

13

A:      Limited visitation—

Q:      Okay.

A:      —that's supervised.

Q:      So, you approve and agree that our petition—

At this point David's counsel objected, stating that it was not appropriate for opposing counsel to negotiate with David on the stand. The trial court stated, "I'm going to sustain that. And furthermore, that is entering into the purview of this court's decision-making realm." Melissa's counsel then stated, "I'm not trying to step on the Court's toes. Just—if we're here as to whether that's in the best interest—." The trial court stated, "I can make that determination," and David's counsel replied, "Yes, sir."

From the exchange quoted above, it is clear that in David's responses to the questions on cross-examination, he was not making any comment on the legal requirements that Melissa must prove to establish that grandparent visitation is in the child's best interest. Moreover, after David's counsel objected to the line of questioning, the trial court sustained the objection and made it clear that it was within the trial court's purview to make the best-interest determination for purposes of whether to award grandparent visitation. Therefore, we do not find David's testimony in this regard dispositive of the grandparent-visitation issue, and it was proper for the trial court to instead analyze and decide the issue taking into consideration the four factors in the grandparent-visitation statute that are required to be proved to establish best interest.

These four factors to determine best interest are listed in Ark. Code Ann. § 9-13-103(e), which provides:

(e) To establish that visitation with the petitioner is in the best interest of the child, the petitioner shall prove by a preponderance of the evidence the following:

(1) The petitioner has the capacity to give the child love, affection, emotional support, and guidance;

(2) The loss of the relationship between the petitioner and the child is likely to:
    (A)    Harm the child;
    (B)    Cause emotional distress to the child;
    (C)    Result in the emotional abuse of the child; or
    (D)    Result in the emotional neglect of the child;

(3) The petitioner is willing to cooperate with the custodian if visitation with the child is allowed; and

(4) Awarding grandparent visitation would not interfere with parent-child relationship.

In the trial court's order, with respect to factor (1), the trial court found that Melissa loves Minor Child, but the court had "serious concerns as to whether or not . . . Melissa . . . has the ability to give proper guidance to the child." The trial court appeared to find that Melissa established factor (2) when it found, "When a relationship is not fostered or a child loses a relationship they have had for many years in their life, it would potentially harm the child." However, the trial court found that Melissa failed to prove factors (3) and (4). With respect to factor (3), the trial court found that Melissa is not willing to cooperate with David if visitation with Minor Child is allowed. And with respect to factor (4), the trial court stated that Melissa's visitation with Minor Child had been tested by David and "has resulted in interference by Melissa . . . with the parent/child relationship."

15

Melissa argues that the trial court erred in having "serious concerns" about her ability to give guidance to Minor Child under the first factor, stating that she proved the capacity to give Minor Child guidance in light of her involvement in the first thirteen years of Minor Child's life. Melissa further argues that the trial court erred in finding that she failed to prove the third and fourth factors, asserting that her testimony established that she is willing to cooperate with David and that awarding her grandparent visitation would not interfere with the parent-child relationship. Melissa notes that in her testimony, she stated that if the trial court granted visitation, she would follow the court's guidelines, participate in counseling, and do whatever she was told to do. Melissa acknowledges that, although she did engage in questionable behavior in providing Minor Child with a cell phone against David's wishes, this occurred during only a few months of Minor Child's life and does not demonstrate that she would be unwilling to cooperate with David if she is granted visitation. Melissa argues that because she established all four factors necessary to prove that grandparent visitation is in Minor Child's best interest, she rebutted the statutory presumption, and the trial court erred in denying her petition.

We hold that on this record, there was no clear error in the trial court's finding that Melissa failed to prove the third and fourth factors under Ark. Code Ann. § 9-13-103(e) that are required to establish that grandparent visitation is in the best interest of the child. The third factor requires proof that the petitioner is willing to cooperate with the custodian if grandparent visitation is allowed, and the fourth factor requires proof that awarding grandparent visitation would not interfere with the parent-child relationship. Melissa's

16

testimony that she is willing to cooperate with David and not interfere with his relationship with Minor Child is belied by her past actions, which demonstrated a pattern of not cooperating with David and instead scheming against him in an apparent attempt to create division between David and Minor Child. Melissa admitted that, in contravention of David's express admonishment, she sneaked a cell phone to Minor Child and then sent texts advising Minor Child to hide the phone from David. Melissa also sent inappropriate texts to Minor Child involving the legal proceedings Melissa was initiating, and she coached Minor Child to probe for and record evidence that would place David in a negative light. On the day after Minor Child's cell phone was taken by school personnel for violating school policy, Melissa filed a DHS report, wherein Melissa alleged that Minor Child was being abused and not being properly fed, and which was later found to be unsubstantiated. David had been allowing Melissa visitation with Minor Child before Minor Child was found to be in possession of the cell phone, and David then terminated the visitation as a result of Melissa's deceitful behavior. Based on the evidence presented, we conclude that the trial court committed no error in finding that Melissa failed to establish that grandparent visitation was in Minor Child's best interest because Melissa failed to prove that she is willing to cooperate with David and failed to prove that grandparent visitation would not interfere with David's relationship with Minor Child.

## V. *Conclusion*

The trial court denied Melissa's petition for grandparent visitation based on its finding that Melissa failed to rebut the statutory presumption that David's decision to deny

17

or limit her visitation was in Minor Child's best interest. For the reasons explained herein, we hold that the trial court correctly applied the grandparent-visitation statute to the facts of this case and that it did not abuse its discretion in denying Melissa's petition for grandparent-visitation rights. We therefore affirm the trial court's decision.

Affirmed.

VIRDEN and BARRETT, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellee.