Cite as 2025 Ark. App. 279

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-24-294

| | | |
|---|---|---|
| | | Opinion Delivered May 7, 2025 |
| MELISSA STARKEY | | |
| | APPELLANT | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. 18DR-23-285] |
| V. | | |
| | | HONORABLE BARBARA HALSEY, JUDGE |
| PATRICK HOLMES AND TOMMIE MITCHELL | | |
| | APPELLEES | AFFIRMED |

**N. MARK KLAPPENBACH, Chief Judge**

Melissa Starkey appeals from an order of the Crittenden County Circuit Court denying her petition for grandparent visitation. We affirm.

Starkey is the maternal grandmother of the minor child (MC) at issue here, who was born in June 2021 to Patrick Holmes and Tommie Mitchell, Starkey's daughter. Holmes and Mitchell were divorced in April 2023; Holmes was granted sole custody of MC, and Mitchell was awarded supervised visitation. In June 2023, Starkey filed a petition for grandparent visitation.

Pursuant to the grandparent-visitation statute, there is a rebuttable presumption that a custodian's decision to deny or limit the grandparent's visitation is in the best interest of the child. Ark. Code Ann. § 9-13-103(c)(1) (Repl. 2020). The grandparent petitioner bears

the burden of rebutting the presumption by a preponderance of the evidence; to do so, the petitioner must show that she has established a "significant and viable relationship" with the child and that visitation with the petitioner is in the child's best interest. Ark. Code Ann. § 9-13-103(c).

A hearing was held in January 2024. The testimony established that when MC was born, Holmes was in the Marines and lived in California with Mitchell. Shortly after MC's birth, Starkey traveled from her home in Arkansas to visit the family for two weeks and help care for MC. Starkey did not see MC again until after Mitchell and MC moved back to Arkansas in April 2022. When MC was nine months old, Mitchell and MC moved in with Holmes's parents in West Memphis. Starkey testified that she began seeing MC often and that he stayed with her at her home in Tennessee for about two weeks every month. This testimony was corroborated by the testimony of Starkey's brother, with whom she and her husband lived. Starkey testified that she formed a close bond with MC during this time, and she once kept MC for an entire month.

Starkey acknowledged that she had filed a petition for an order of protection against her husband in 2020 alleging that he had physically abused her and threatened to kill her on several occasions; however, she said he had received help and was totally different now. Starkey testified that she would like to be awarded visitation every other weekend as well as a week for a vacation, but she was willing to take any kind of visitation the court deemed reasonable. She said she would not interfere with the parents' relationship with MC and would respect their wishes.

Holmes, Mitchell, and Holmes's mother disputed that MC spent that much time with Starkey. Both Mitchell and Holmes's mother, Stephanie Smith, testified that Mitchell and MC lived with Smith for about two months, and Smith took care of MC while Mitchell worked. In June 2022, Mitchell moved into her own house in West Memphis, but Smith continued to be MC's primary caretaker while Mitchell worked. Smith was not aware that MC ever went to stay with Starkey in Tennessee during this time. A few months later, Mitchell moved again, and Smith lost contact with her. Mitchell testified that MC lived in California with Holmes in January and February 2023 before returning to live with her in her new home in Tennessee. Mitchell testified that MC stayed with Starkey for only half a week one time, although Starkey had requested he stay for two weeks. Mitchell agreed to let him stay for one week, but she picked MC up early because he was unhappy when she called. Mitchell said that Starkey had always been welcome to visit MC at her home.

Starkey testified that she enjoyed regular visits with MC until April 2023 when she called the police and child-protective services after she saw a picture of MC with a bruise on his face while in Mitchell's custody. As a result of this incident, MC was temporarily placed in Smith's care until mid-April when Holmes was able to get him and take him back to California. While MC was in Holmes's custody, Starkey asked to FaceTime MC nearly every day, and Holmes allowed it when possible. In April, she told Holmes that she was going to hire an attorney to get her visitation in writing. Holmes stopped responding to her requests to FaceTime in June, and Starkey then filed her petition.

3

Holmes left active duty and moved back to West Memphis in August 2023. Since then, Mitchell had been exercising visitation under Holmes's supervision whenever their busy schedules allowed, which had amounted to once or twice a month for a couple of hours. Mitchell also had a brief FaceTime call with MC nearly every night. Holmes testified that after Starkey told him she was filing for visitation, he told her she was too controlling and he no longer wanted contact. Holmes claimed that Starkey is vindictive, controlling, and needs everything to be her way. He also felt that visitation is not in MC's best interest due to the past domestic violence between Starkey and her husband that he only recently became aware of. Finally, Holmes felt that it was more important to facilitate MC's relationship with Mitchell and that adding visitation with Starkey would be difficult and would leave less time for him to spend with MC. Holmes said that it would be reasonable for Starkey to have visitation under his supervision once a month when his schedule allowed. Mitchell also felt that any visitation should be limited to supervised once a month; she did not want it to reduce her visitation time.

On appeal, we give due deference to the superior opportunity of the circuit court to view and assess the credibility of the witnesses, and we will reverse a finding by a circuit court only if it is clearly erroneous. *Harvill v. Bridges*, 2012 Ark. App. 683. A finding of fact is clearly erroneous when, despite supporting evidence in the record, the appellate court, viewing all of the evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.*

4

The circuit court did not make a specific finding regarding whether Starkey had established a significant and viable relationship with MC; however, the court did find that she had failed to prove that visitation was in MC's best interest. To establish that visitation with the petitioner is in the best interest of the child, the petitioner shall prove by a preponderance of the evidence the following:

> (1) The petitioner has the capacity to give the child love, affection, emotional support, and guidance;
>
> (2) The loss of the relationship between the petitioner and the child is likely to:
>
> (A) Harm the child;
>
> (B) Cause emotional distress to the child;
>
> (C) Result in the emotional abuse of the child; or
>
> (D) Result in the emotional neglect of the child;
>
> (3) The petitioner is willing to cooperate with the custodian if visitation with the child is allowed; and
>
> (4) Awarding grandparent visitation would not interfere with the parent-child relationship.

Ark. Code Ann. § 9-13-103(e). The court found that (1) Starkey's ability to give guidance to MC "comes into question" given testimony regarding Starkey's husband's criminal past and abusive behavior; (2) Starkey had failed to prove a loss of relationship or that any loss of relationship would likely result in harm or emotional distress to MC; (3) Starkey's statement alleging her willingness to cooperate with Holmes was less than convincing; and (4) Starkey

5

failed to prove that awarding grandparent visitation would not interfere with the parent-child relationship.

Starkey challenges all these findings; however, failure to prove any one factor is reason to affirm, and we focus on the second factor. Assuming that Starkey's relationship with MC had been or would be lost in the absence of a court order, we agree with the circuit court that Starkey failed to prove that such a loss was likely to harm MC, cause emotional distress to MC, or result in emotional abuse or neglect of MC.

Starkey relies on the fact that she reported suspected abuse of MC that allegedly occurred at the hands of Mitchell's boyfriend. She argues that without her presence in MC's life, the abuse would likely have gone unreported, and without her continued presence in his life, there is a likelihood that future abuse or neglect may occur, and there would be one less person to protect MC. Starkey's argument, however, fails to account for the fact that any danger that Mitchell poses to MC was remedied by the custody order put in place after the alleged abuse. Holmes now has full custody, and Mitchell has only supervised visitation. Starkey testified that Holmes is a good father and that MC is safe with him.

Regarding emotional harm, Starkey's petition was filed just before MC's second birthday. The evidence established that he had spent more than half of his two years in California. While there were about ten months that MC was living in Arkansas and Tennessee that he could have potentially spent time with Starkey, the circuit court found that to the extent the testimony was conflicting, the testimony of Starkey and her witnesses regarding the time MC stayed with her was not credible. Mitchell testified that Starkey spent

6

much less time with MC than Starkey indicated. Mitchell acknowledged that Starkey had a relationship with MC, but she "would not deem it necessarily close." Holmes testified that he did not believe losing the relationship would be hard on MC, noting that MC had not asked for Starkey.

Considering MC's young age and the lack of time spent with Starkey, we cannot say that the circuit court clearly erred in finding that Starkey failed to prove that loss of the relationship was likely to harm MC. There is a substantial difference between a relationship benefiting a child and the denial of that relationship harming the child. *Shores v. Lively*, 2016 Ark. App. 246, 492 S.W.3d 81. The best interest of the child cannot be proved simply by showing that a meaningful or substantial relationship existed and that the grandparent desired to further that relationship. *Id.* Accordingly, we affirm the denial of Starkey's petition due to her failure to prove that visitation was in MC's best interest.

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*Davidson Law Firm*, by: *Nickolas W. Dunn*, for appellant.

*Bart Ziegenhorn*, for separate appellee Patrick Holmes.